KRETCH ET AL., PLAINTIFFS, *v.* STARK ET AL., DEFENDANTS.

Common Pleas Court, Sandusky County.

No. 31446.   Filed February 21, 1962.

*Mr. Paul J. Gnau* of *Messrs. Benesch, Friedlander, Mendelson, Gnau & Coplan,* for plaintiff.

*Mr. A. L. Hyzer* of *Messrs. Culbert, Hyzer & Culbert,* for defendant.

GABEL, J. Plaintiffs as heirs-at-law and devisees of Rose K. Stern bring this action for alleged breach of the rental provisions of a lease affecting premises at 108 North Front Street, Fremont, Ohio.

Plaintiffs are successors-in-title as lessors under a lease executed by Rose K. Stern as lessor and Richard Stark as lessee on July 30, 1955, for a term of five years from August 15, 1956, to August 14, 1961. This lease (Exhibit No. 1) contained the following purpose clause:

"Said leased premises are to be used for the purpose of operating a retail store for the sale of general wearing apparel and for no other purpose without the written consent of said lessor."

Under Item 25 of the expressed covenants we find the following provisions:

"Lessee shall have the right to transfer and assign within lease and/or to sublet within leased premises or any part thereof without the written consent of the lessor; provided, however, that neither the transfer nor the assignment of said lease nor the sub-letting of said premises or any part thereof nor the acceptance of any rental by the lessor from any transferee, assignee or sub-lessee shall in any way affect the liability and the obligations of the original lessee named herein."

Under the provisions of Item 25 as set forth above the lessee, Richard Stark, individually never operated a business on these premises. Richard's of Fremont, Inc., were the owners and operators of the business under this lease as well as all preceding leases.

Richard's of Fremont, Inc., was a closed corporation owned by Richard Stark and his father and mother as stockholders. According to the evidence in this case Richard Stark transferred all of his stock in the corporation on May 27, 1959, to his father and mother and no longer has any direct interest in the corporation as a stockholder.

On the 21st day of April, 1956, Richard Stark obligated himself under a lease (Exhibit No. 17) for premises located at 110 North Front Street, immediately north of the leased premises which are the subject of this lawsuit. This lease, executed on the 21st day of April, 1956, with the Youngman

heirs was to run for a period of five years from August 1, 1956, to July 31, 1961, with an option for two more five year terms at a fixed rental of $200.00 per month. This lease permitted a break-through in the south wall into the premises at 108 North Front Street.

Thereafter and for a considerable time extending into 1959 the defendant Richard Stark negotiated with Rose K. Stern and the plaintiffs herein trying to get their permission to open the wall between 108 North Front Street and 110 North Front Street without success.

Failing to get permission to break through the wall separating these premises defendant Richard's of Fremont, Inc., began operating in the Youngman room in late October or early November of 1956 and thereafter until January 21, 1959, both premises were occupied and used by Richard's of Fremont, Inc., for the sale of wearing apparel, 110 North Front Street operated as ''Town and Country'' and 108 North Front Street as ''Richard's.''

Records of sales for these two store rooms were kept separately.

| PERIOD ENDING | ''RICHARD'S'' | ''TOWN & COUNTRY'' |
|---|---|---|
| July 31, 1957 | $164,484.27 | $ 88,914.12 |
| July 31, 1958 | $ 76,420.50 | $140,814.02 |
| July 31, 1958 to January 21, 1959 | $ 38,764.38 | $171,352.44 |
| July 31, 1960 | NONE | $221,130.26 |
| July 31, 1961 | NONE | $202,670.25 |

It is admitted that check in the amount of $4,450.50 represents five and a half percent less the basic rental in full payment for all sales made in the premises which are the subject of this lawsuit.

On or about January 21, 1959, the entire business of Richard's of Fremont, Inc., was transferred to 110 North Front Street and 108 North Front Street was used only for office, storage and window display. Lessee, however, continued to pay basic rental of $400.00 per month under his lease with plaintiffs and tendered his check for $600.00 for the last month and

a half of the term which was refused because the voucher attached to the check had inscribed thereon this statement:

"Rental on premises at 108 North Front Street from July 1 to August 15, 1961, in full for all rent due under lease dated July 30, 1955."

The rental agreement with Rose K. Stern and her successors-in-title is incorporated in Addendum "A" of the lease which is Exhibit No. 1 in this case, and the provisions of which are as follows:

"The lessee agrees to pay as annual rental for the within leased premises during the five-year period of the within lease a sum equal to five and one-half percent of the annual gross sales of the business conducted by lessees on said premises; provided, however, that in no event shall the annual rental agreed to be paid by the lessee during said period be less than FOUR THOUSAND EIGHT HUNDRED DOLLARS ($4,-800.00)."

"The said annual rental shall be payable in monthly installments of FOUR HUNDRED DOLLARS ($400.00), beginning on the 15th day of August, 1956, and continuing on the 15th day of each and every month thereafter during the term of the within lease."

"It is understood and agreed that the provision for a percentage of annual gross sales has reference likewise to and shall be binding upon any and all transferees, assignees or sublessees of the leased premises or any portion thereof it being intended that the said provision for a percentage is to be based upon the entire gross sales of business *done in and upon the leased premises.*"

In their first cause of action plaintiffs charge defendants with fraud in diverting the sale of merchandise from premises owned by the plaintiffs to the adjoining premises and claim damages in the amount of $100,000.00.

The Court has made a complete review of the testimony of the witnesses and the exhibits (Exhibits Nos. 18 to 48, Exhibits 7, 50, 53 to 58, 60 and 61) and after consideration of the prolonged negotiations for a break-through of the wall separating the premises leased by the defendants, the Court cannot conclude that the acts and conduct of the defendants

are part of a plan, scheme or design intended to damage plaintiffs or intended by defendants *to evade an obligation owing to the plaintiffs.* In this respect the Court cannot find that this phase of the case has been proven by a preponderance of the evidence, much less by clear and convincing evidence. It is the opinion of the Court that defendant Richard Stark sincerely contemplated expanding his business by leasing the Youngman premises and arranging to have the Youngman lease run concurrently with the lease which is the subject of this action. Apparently he was too optimistic in his judgment that plaintiff lessors would agree to a break-through of the wall separating the premises so that both rooms would be operated as a single unit but an honest mistake in judgment is not fraud. If Rose Stern had lived there is strong probability he might have succeeded.

Plaintiffs' second cause of action also alleges fraud and seeks the judgment of the Court requiring defendants to account for and pay percentage rental of five and one-half percent on all merchandise sold in the adjacent premises from November, 1956, to August 14, 1961.

Plaintiffs' third cause of action seeks the judgment of this Court requiring defendants to account for and pay percentage rental up to August 14, 1961, on all sales made in the adjoining premises on the theory that the use of plaintiffs' premises and the premises adjoining is such that any sales made in the adjacent premises are sales made in the premises owned by plaintiffs.

As previously indicated, the Court can make no finding of fraud. If defendant is to be charged with percentage rental for sales made elsewhere other than the premises of the plaintiffs the question to be decided is: Was defendant obligated by express or implied covenant under his lease with plaintiffs to remain in possession and use and occupy the leased premises to the end of the term for the sale of general wearing apparel?

Apparently this is a case of first impression in the State of Ohio as there are no Ohio decisions on this subject. However, there is an annotation on the subject in 170 A. L. R., 1113, 38 A. L. R. (2d), 1113, and 46 A. L. R., 1134. At page 1117 of 170 A. L. R., the general principle is enunciated that greater

leeway is allowed to the lessee of a percentage lease with respect to the use and occupancy of the premises and the conduct of business where there is a *substantial guaranteed minimum rental*. Liability to pay only the minimum amount and freedom of the lessee to stop, move or alter the business and pay the minimum amount is in some jurisdictions supported and in others denied. Counsel for the parties have each filed briefs in this cause citing numerous cases which they contend support their position.

The Court will first review the cases cited by the plaintiff.

The first case cited by plaintiff is Goldberg, 168-05 *Corp.* v. *Levy et al.* (9 N. Y. S. (2d), 304). In this case the plaintiff alleges a *conspiracy* on the part of the defendant to reduce gross income of his business by deliberately planning a reduction in the gross sales conducted on the leased premises.

This case rests solely on a decision of a trial court in overruling a motion to dismiss the petition for failure to state facts sufficient to constitute a cause of action and in stating his conclusion the trial judge assumed the truth of the allegations of the petition charging a conspiracy.

Another case cited by plaintiffs is *Cissna Loan Co.* v. *Baron* (149 Wash., 386—270 Pacific, 1022). This case can easily be distinguished from the case at bar in that lessee in the *Cissna case* did cut openings in the wall between the leased premises and an adjoining building. The court found in this case that the customers could be considered as having done most or all of their business transactions in the leased premises and furthermore, the entrance to the adjoining premises was solely and exclusively through plaintiff's building and all displays for advertising purposes were made in the show windows of the plaintiff's building. Furthermore, all newspaper advertising identified the business as that of the lessee occupying plaintiff's premises. The court in its opinion further says:

"Customers obtained access to the departments in the adjoining building by going through respondent's building. The goods are displayed in respondent's show windows and the entire business is administered and conducted within the demised premises. Appellant is conducting one business only, that of the "Fair Department Store" and is bound to pay as rent for respondent's building the agreed percentage of the gross sales

of the said department store business. - - - It is perfectly clear that at least a considerable portion of the "business" of selling the goods contained in the MacArthur Building is actually conducted in respondent's building."

In the instant case the store rooms were operated separately. There were separate entrances; records of sales were kept separately. The one store was identified as "Richard's" and the other as "Town and Country."

The next case cited by plaintiff is that of *Fox* v. *Fox Valley Trotting Club* (8 Ill. (2d), 571—134 N. E. (2d), 806). In this case the stipulated rental was $25,000.00 per year plus varying percentages of gross receipts. This case is readily distinguishable from the case at bar for the reason that the premises leased could be used for no other purpose and were designed exclusively for horse racing. Plaintiff's property in the above cited case was valued at $1,500,000.00 and a $25,000.00 base rental would yield only one and two-thirds percent on the investment. In the case at bar, considering downtown real estate values in the City of Fremont, plaintiffs' building would probably be valued at not in excess of $30,000.00. A base rental at $4,800.00 would be a sixteen percent return on the investment.

Counsel for plaintiff cites the case of *Dunham and Co.* v. *Realty Co.* (134 N. J. Eq., 237) (35 Atlantic (2nd), 40). This case had a provision for a percentage rental with a minimum basic rental on a graded scale in step-ups from year to year. The lease contained a definition of the meaning of gross sales as follows:

"The selling price of all service rendered on and/or from and/or in connection with the aforesaid department store premises."

In this case we have language defining gross sales which is much more inclusive than the language expressing the purpose to which the premises are to be used in the case at bar. The court in this case in construing the words "in connection with" recited the oral testimony taken which clarified the intention of the parties and from this testimony the court inferred that the sales other than those made on the premises but having connection with the business of the firm were to be included in computing the percentage rental and that the

language was intended to cover sales made through agents and canvassers on the outside.

*Carter* v. *Adler* (138 Cal. App. (2d), 63—291 Pacific (2nd), 111). This case also involved a percentage lease in which the landlord opened a competing business in the immediate area of the leased premises, one of the terms of the lease being that the landlord was not to do anything to depress the sales of the tenant. It is apparent that this case has no factual relation to the case at bar. Plaintiff quotes in his brief Syllabus 10 of this case which, under a given factual situation, would be good law but in the opinion of this Court has no application to the case at bar.

Another case cited by plaintiff is *Taylor* v. *Finnigan* (189 Mass., 568—76 N. E., 203). This case has no factual relation whatever with the suit at bar and was primarily concerned with the question of constructive eviction for failure on the part of the lessor to provide facilities for entrance and exit to the premises leased.

Plaintiffs' next case is that of *Marvin Drug Co.* v. *Couch* (134 S. W. [2d], 356). This case is easily distinguished from the case at bar for the reason that the lease provided for *continued occupancy* of the premises as a drugstore and for the further reason that the rental consideration was entirely based upon percentage of sales with no provision for base rental.

*Safran* v. *Westrick* (136 Misc., 81—N. Y. S., 238), is also cited by plaintiffs as authority for their contentions. Syl. 3 of this case reads as follows:

"Covenants in lease restricting lessee's use of premises and prohibiting use thereof for restaurant were equivalent to express covenant on his part not to use leased stores in violation of restriction."

The leased premises in this case were to be used as a restaurant and contained this clause:

"The landlord agrees that he will not during the term of this lease let any other store - - - for a restaurant."

It is apparent that we have an entirely different factual situation in the cited case to that of the case at bar.

Plaintiff also cites American Law of Property, Vol. 1, Section 3.66, as follows:

"In many leases, particularly of commercial property where location is important the rental is reserved in terms of a percentage of gross sales or net profits, usually with a flat minimum rental which is *fixed at an amount below the present rental value.*"

Quoting further:

"Consequently many but not all courts have implied covenants which would not be implied in flat rental leases so it has been held that there is an implied covenant to occupy and use the property and also reasonable diligence to operate the business in such manner as to produce profits or receipts. This rule prevents the lessee from diverting business to another location in order to avoid paying the percentage rent."

This is undoubtedly a fair statement of the law with reference to percentage leases where the basic rental is a flat minimum fixed at an amount *below the present rental value.*

Pertinent to this question is the case *Tuttle* v. *W. T. Grant Co.* (171 N. Y. S. (2d), 955), cited by defendants. The percentage rental lease in this case affected premises in the City of Canandaigua, New York. The premises were leased to the defendant for a term of 21 years ending July 31, 1951. Shortly before the expiration of this lease a supplemental agreement was executed extending the term to July 31, 1956, and changing the provisions with respect to the rent to be paid. Under the original 21 year lease the defendant was required to pay an annual rental of $3,300.00 and an additional rental of five percent of its annual gross sales over $66,000.00. The supplemental agreement fixed the annual rental at $6,000.00 but the percentage was reduced to three percent of the gross over $120,000.00, and extended the term of the lease for an additional five years. Nine months prior to the expiration of the period covered by the supplemental agreement the defendant W. T Grant Co. vacated the demised premises and moved its retail operations across the street. The defendant however continued to pay the fixed annual rental of $6,000.00 per annum for the balance of the term but refused to pay anything in the nature of an "additional rental." Plaintiff brought this action to recover percentage rental claimed due. In the *Tuttle case,* plaintiff's claim that there was an implied covenant on the

part of the defendant to operate its business in, on and from the demised premises during the whole of the extended term while in possession thereof and to use reasonable efforts to produce the gross sales contemplated by the parties. In construing the agreement or contract of the parties the court says:

"The law of this State is loath to find implied covenants hidden between the lines of the express agreement of the parties. It is only where the covenant is so clearly within the contemplation of the parties that they felt it unnecessary to make it express or where the covenant though never consciously considered by the parties is necessary to give meaning and effect to the contract as a whole that we are justified in indulging in implications."

Quoting further, at page 957 (3):

"Can it be said that a covenant to remain in possession was so clearly within the contemplation of the parties that their failure to make it express can be overlooked and assumed? We believe the admitted facts and the language employed in the lease negative any such implication. Quite significantly the lease contains the usual sub-letting provision permitting the tenant to sub-lease or assign *with the consent of the landlord* which consent the landlord agrees shall not be unreasonably withheld."

In the case at bar the provision of the lease as to assigning and sub-letting reads as follows:

"Item 25—Lessee shall have the right to transfer and assign the within lease and/or to sub-let the within leased premises or any part thereof *without the written consent of the lessor*; provided, however, that neither the transfer nor the assignment of said lease nor the sub-letting of said premises or any part thereof nor the acceptance of any rental by the lessor from any transferee, assignee or sub-lessee shall in any way affect the liability and the obligations of the original lessee named herein."

Quoting further from *Tuttle* v. *W. T. Grant Co.*, at page 957 (3):

"Under this provision the tenant could have sub-leased to any legitimate business which would have paid the fixed rental even though such sub-tenant's prospects of exceeding the

$120,000.00 gross sales figure were not as good as or similar to defendant's.  Under such a sub-lease, defendant though not in possession would clearly have no liability for amounts payable on the gross sales it might have made had it remained in possession.  The presence of this sub-lease provision in our view strengthens and supports the appellant's position that no implied covenant was intended.  *Furthermore if the parties intended defendant to have the obligation of both paying rent and remaining in possession it would have been simple to have expressed their understanding in their agreement.*  Common experience dictates the conclusion that tenants under this form of lease do not deem themselves obliged to remain in possession.  Here the arrangement does not give rise to a situation 'instinct with an obligation' such as might well be the case if we were confronted with a *pure percentage lease.*"

Quoting further from the same opinion at page 958:

"The fixed annual rent for property in Canandaigua, New York, of $6,000.00 leaves little room for the argument that it was as a matter of law an inadequate consideration for the demised premises."

In the instant case the Court too has little doubt as to the adequacy of the fixed rental for the leased premises.  The minimum in the case at bar is $400.00 per month which is considerably higher than any rentals paid by other tenants in the same block on the same side of the street in the City of Fremont.  (See testimony of McCarthy, Pages 88, 89 record; testimony of Nickel, Page 87; testimony of Klos, Pages 82, 83; testimony of Marconi, Pages 77, 78; testimony of Denman, Pages 71 to 74.)

All of the above named witnesses are tenants in the same block within a few doors from the premises leased by Richard Stark and all of them are paying a fixed rental of anywhere from eighty to two hundred dollars less than the minimum required of the defendants herein for premises that are comparable in size and dimension to those involved in this lawsuit.

Defendants also cite the case of *Monte Corporation* v. *Stevens* (324 Pacific (2d), 538).  This case was decided on February 18, 1958, by the Supreme Court of Oklahoma and it involved an action for damages for alleged breach of a lease

that provides both for a minimum rental and a bonus rental based on a percentage of sales. The lessee would pay the lessor as rental either the sum of $200.00 per month as a minimum rental or an amount of money in cash equal to seven percent of the gross income of lessee that accrues from said lessee's operations in the leased premises during each month of the term of this lease, which ever sum is the greater.

Under the above quoted percentage arrangement sales increased to the point where defendant was paying a little more than $400.00 per month. The lease was for a term of five years beginning May 9, 1951, and expiring on May 9, 1956. On May 1, 1955, the defendants moved their business and abandoned the leased premises. The purpose clause of the lease provided that the premises were to be used *only for the conduct of business in selling baby and children's wear, clothing and related items* and lessor agrees that during the term of this lease that no other part or portion of the property owned by lessor will be rented for the conduct of a similar specialty shop.

Here too, as in the case at bar, there is no express covenant in the lease requiring the defendants to continue to occupy the premises and the court held that under the terms of the contract relied upon by the plaintiffs none could be implied. The trial court in the above cited case made a finding that the plaintiff was entitled to the minimum rental of $200.00 per month during that period of the term when the defendant was not occupying the premises. At page 539 of the opinion we find the following language:

"The only question we have to decide is whether the contract was such as to require the defendants to operate their business in the building so as to make the plaintiffs more rent each month than the minimum rent of $200.00 specified in the contract. After an examination of the entire contract we do not think it possible to give it that meaning. It appears to us under the terms of the contract the defendants could operate their business in the building one or two days a week if they so desired or could close the store at any time for any period they desired and only be liable for the $200.00 rent per month if 7 percent of the merchandise they actually sold during the month did not exceed that amount."

The court further says:

"There is no express covenant in the lease requiring the defendants to continue to occupy the premises and to conduct the business of selling merchandise therein and under the terms of the contract relied upon by the plaintiffs and cited herein none can be implied as the subject is completely covered by the contract."

Plaintiff in the case at bar places great reliance on the purpose clause in the lease which reads as follows:

"Said leased premises are to be *used* for the purpose of operating a retail store for the sale of general wearing apparel and for no other purpose without the written consent of said lessor."

Practically all of the cases cited by plaintiff as well as by defendant have somewhat similar language as to the use that the premises are to be put. However, none of the cases that I have examined conclude that this language requires the tenant to occupy and use the premises for the purposes set out in the lease. This language merely limits the purpose to which the premises may be put by the tenant or by an assignee or a sublessee *while in occupancy.*

Another case holding that there is no implied covenant to occupy the premises under a percentage lease arrangement with a fixed adequate base rental is *Jenkins et al* v. *Rose's 5, 10 and 25c Stores, Inc.* (213 N. C., 606—197 S. E., 174). Syl. 1 of the above styled case reads as follows:

"Apart from the question of liability for waste a tenant is under no obligation in the absence of specific provisions therefor to occupy, use or continue to use leased premises even though one of the parties or both expected and intended that premises would be used for a particular purpose to which they seemed to be adapted or constructed."

Syl. 2—"Under lease of store building guaranteeing minimum rental of $2,400.00 for one year term payable in monthly installments of $200.00 and providing that if sales should exceed $48,000.00 at expiration of the term, lessee should account to lessors and pay five percent on any sales in excess of $48,-000.00, there was no implied covenant to operate a store in the building and in the absence of a specific provision that lessee

should occupy the building and operate a store therein during the life of the lease a payment of $2,400.00 for the year during which lessees did not operate a store in the building was a full settlement of rent due for that year.''

The case of *Cousins Inv. Co.* v. *Hastings Clothing Co.* (113 Pacific (2d), 878), lays down rules which should control the exercise of judicial authority in implying covenants. Syl. 4 on this score reads as follows:

''The implication must arise from language used or it must be indispensible to effectuate intention of parties. It must appear from language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it. Implied covenants can only be justified on grounds of legal necessity. Promise can be implied only where it can be rightfully assumed that it would have been made if attention had been called to it. There can be no implied covenant where subject is completely covered by the contract.''

Syl. 5 reads as follows:

''Where amendatory lease provided for payment as rental of five and a half percent of gross income of tenant's business with $4,000.00 monthly minimum, tenant, which moved business to another location two months and four days prior to expiration of lease, paying minimum for full term, was not liable in addition for percentage rental which landlord would have received if tenant had remained in business on premises until expiration of lease, on theory that there was 'implied covenant' requiring tenant so to do.''

Syl. 6:

''Where parties have entered into written engagements which industriously express obligations which each is to assume courts should be reluctant to enlarge them by implication as to important matters, presumption being that having expressed some they have expressed all of the conditions by which they intended to be bound.''

In this case the defendant Hastings Clothing Co. had been in occupancy of the premises for 22 years preceding April 26, 1939, when it vacated the premises and for the remaining two months of the term paid the base rental.

In the case of *Masciotra* v. *Harlow et al.* (233 Pacific (2d),

586), the plaintiff brought an action for alleged nonperformance of covenants in a lease. The lease was for a term of five years from March 15, 1945, and provided for a monthly rental of seven percent of the gross receipts with a minimum of $250.00. During the course of defendant's operation of the business the business improved to the point where defendant was paying a monthly rental in excess of one thousand dollars but eventually business deteriorated and eventually the only rental paid was the minimum. It is true that in this case the instant lease was not a renewal of a prior lease. There had been no established business which the parties could take into consideration in determining the minimum rental. It was a new venture and the parties had no way of estimating the probable revenue. The court concluded that the parties considered the stipulated minimum to be in itself a fair and adequate rental and that any additional sum by way of percentage was in the nature of a bonus. However, this case too is in line with others of similar import where the court has held that where there is a *substantial adequate minimum* there is no implied covenant that lessee will operate its business on the premises throughout the term of the lease. It seems to the Court in the case at bar that the whole question of whether or not there is an implied covenant turns upon the question as to whether or not there was a substantial adequate minimum provided for in the lease between plaintiffs and the defendants, and as indicated by comment made in earlier parts of this opinion this question is answered in the affirmative.

In conclusion, therefore, the rule followed in most jurisdictions is as follows:

Where a lease provides for rental based on a percentage of sales with a *fixed substantial adequate minimum* and there is no express covenant or agreement to occupy and use the premises, no implied covenant or agreement will be inferred that the lessee is bound to occupy and use the premises for the purpose expressed in the lease. Under such a lease, lessee has no obligation to occupy and use the premises for any stated definite period of time and his obligation under such a lease is limited to the payment of the basic minimum rental to the end of the term when he no longer occupies and uses the premises for the purpose expressed in the lease.

It is therefore the judgment of the Court that first, the defendants cannot be charged with any fraud, deceit, scheme or plan to divert business from the leased premises. Second, the express conditions of said lease have not been breached by the defendants. Third, there is no express or implied covenant in said lease requiring defendants to occupy and use the premises for the sale of general wearing apparel. Fourth, the lessee in paying the minimum rental of $4,800.00 per annum paid a substantial adequate rental and the plaintiffs are not entitled to any percentage of sales made in the adjoining premises.

It is therefore ordered, adjudged and decreed that plaintiffs recover from the defendants the sum of $600.00, being the amount of rental due and tendered. The costs of suit are assessed against the plaintiffs by reason of their refusal to accept payment as tendered. Attorneys for defendant will prepare Entry.