JOFFE ET AL., APPELLEES, *v.* SEARS, ROEBUCK & COMPANY, APPELLANT.

244

(No. 9-84-13—Decided June 6, 1986.)

*F. Riley Hall* and *Irvin J. Zipperstein,* for appellees.

*Murphey, Young & Smith, David J. Young* and *Kevin R. McDermott,* for appellant.

MILLER, J. This is an appeal by defendant, Sears, Roebuck & Company, from judgments of the Court of Common Pleas of Marion County.

Plaintiffs, Eugene Joffe, S.P.B., Inc., and Southland, Inc., entered into a lease with Sears, Roebuck & Company (hereinafter "Sears") for the lease of premises in a shopping mall to be utilized as a retail store by Sears together with a warehouse area and an automotive tire service area.

Sears subsequently determined that it no longer needed some 8,000 square feet of warehouse space as it had adopted central warehousing of its "big ticket items" such as refrigerators, washers, dryers, etc.

Sears sublet without plaintiffs' consent the 8,000 square feet of warehouse space to General Telephone Company of Ohio for the purpose of storing wire.

Plaintiffs filed their amended complaint against Sears, naming General Telephone Company of Ohio as a party, seeking a declaration that the true and proper intent of the lease between plaintiffs and Sears did not permit a subleasing of the premises for purposes not connected with retail sales on the premises without plaintiffs' consent, an injunction enjoining Sears from maintaining a sublease and preventing General Telephone Company of Ohio from occupying said premises without consent of plaintiffs, and for money damages on these causes of action.

General Telephone Company of Ohio was dismissed as a party defendant. The trial court entered three judgments, but only its judgment concerning the declaratory judgment aspect of the case is raised by Sears' assignment of error. That judgment incorporated by reference the trial court's memorandum of decision and, in pertinent part, provided:

"WHEREFORE, IT IS ORDERED, ADJUDGED and DECREED that the demand for injunction by the plaintiffs to enjoin the defendant, Sears, Roebuck and Company, from subletting the premises for purposes not connected with retail sales without the consent of the plaintiffs, is denied.

"IT IS FURTHER ORDERED, ADJUDGED and DECREED that there is an implied covenant to the lease between the plaintiffs and Sears, Roebuck and Company which requires Sears, Roebuck and Company, in the event of a partial sublet, not for the purpose of retail sales, to pay, in addition to any percentage rent on sales from the retained portion of the premises, a rent for the portion sublet not for retail sales which is equal to the average monthly rental paid for the space sublet not for the retail sales for the preceding thirty-six (36) months immediately preceding the sublet."

The sole assignment of error is:

"The trial court erred in rendering

judgment for the Landlord upon the basis of what the court found to be an implied covenant in the lease requiring the Tenant to pay additional rent when the Tenant subleased a portion of the premises."

The lease provided that the demised premises was "to be occupied for the sale and storage of general merchandise, farm equipment, tires, batteries and accessories and all of said demised premises to be used for a retail store and for any other lawful purpose."

The lease further provided that landlord agreed to include upon the premises "a new retail store building containing a gross area of not less than ninety-nine thousand (99,000) square feet which will provide not less than forty-four thousand (44,000) square feet of sales area, an 8-car Tire Service Station and not less than twenty-five thousand (25,000) square feet of attached warehouse space."

The lease provided that "the Tenant shall have the right to assign this lease or sublet the demised premises or any part thereof, for any lawful purpose, provided * * * further, however, that Tenant shall have the right so to assign or sublet the premises or any part thereof for the operation of a business similar to, or comparable with the lines of merchandise and services authorized for Tenant under this Lease. * * *"

The rental for the premises was to be two and one-half percent of all net sales up to the first $5,000,000 in each lease year, two percent of all net sales in excess of $5,000,000 and up to $6,000,000, and one and one-half percent of all net sales in excess of $6,000,000.

The lease defined net sales "to mean the gross sales made upon the said demised premises by Tenant and gross sales, if any, made upon the said demised premises by Tenant's departmental sublessees, concessionaires and licensees occupying space upon said premises," but excluding sales, use or excise taxes, returns of items, delivery and service charges, credit charges, catalog sales and sales of insurance policies.

Although we find no direct authority as to an implied covenant that lessor should share in the rentals paid by General Telephone Company to lessee, Sears, Roebuck and Company, we find authority which we believe to be somewhat analogous thereto.

In the well-reasoned and highly analytical opinion concerning "percentage leases" in *Kretch* v. *Stark* (1962), 26 O.O. 2d 385, 92 Ohio Law Abs. 47, 193 N.E. 2d 307, the court of common pleas said:

"* * * the general principle is enunciated that greater leeway is allowed to the lessee of a percentage lease with respect to the use and occupancy of the premises and the conduct of business where there is a *substantial guaranteed minimum rental.* * * *" (Emphasis *sic*.) *Id.* at 388, 92 Ohio Law Abs. at 52-53, 193 N.E. 2d at 310.

The court further said:

"Where a lease provides for rental based on a percentage of sales with a *fixed substantial adequate minimum,* and there is no express covenant or agreement to occupy and use the premises, no implied covenant or agreement will be inferred that the lessee is bound to occupy and use the premises for the purpose expressed in the lease. Under such a lease, lessee has no obligation to occupy and use the premises for any stated definite period of time and his obligation under such a lease is limited to the payment of the basic minimum rental to the end of the term when he no longer occupies and uses the premises for the purpose expressed in the lease." (Emphasis *sic*.) *Id.* at 393, 92 Ohio Law Abs. at 62, 193 N.E. 2d at 316.

"In light of the lack of general

guidelines in this area, one commentator has suggested that when the parties' original intent is not clear, courts should be willing to apply legal presumptions consistent with the underlying purposes of percentage leases in order to imply such original intent. * * * [O]ne of the foremost purposes of percentage leases is to allow the landowner-lessor to receive a rental based on the value of the location of the leased premises; thus, it can be presumed that parties to a percentage lease intend that all receipts representing profit-making transactions reasonably related to the location are to be included in the calculation of percentage rentals. Applying such an approach, it has been argued, for example, that sales by sublessees should be included in the calculation of percentage rentals, since such sales result from the value of the lessor's location, just as if they had been made by the lessee himself, and in fact, such has been the result of the majority of the cases. * * *'' (Footnotes omitted.) Annotation (1974), 58 A.L.R. 3d 384, 397.

We conclude that the intent of the parties to this lease was that the total demised premises was to be occupied for the retail sale and storage of lessee's merchandise.

We further conclude that the trial court did not err to lessee's prejudice in finding an implied covenant between the parties requiring the tenant to pay additional rent for the subleased portion of the premises.

The judgment of the Court of Common Pleas of Marion County is affirmed.

*Judgment affirmed.*

GUERNSEY, P.J., and COLE, J., concur.