DOWNTOWN ASSOCIATES, LTD., APPELLANT, *v.* BURROWS BROS. COMPANY, APPELLEE.

(No. 51076—Decided October 14, 1986.)

*C. Douglas Lovett,* for appellant.

*George F. Karch* and *Thomas F. Zych,* for appellee.

ANN MCMANAMON, J. Plaintiff Downtown Associates, Ltd. (the "lessor") appeals from a summary judgment against it and in favor of Burrows Bros. Co. (the "lessee"), the defendant in an action for alleged breach of a percentage rental agreement. The lessor's appeal is timely, and raises three assignments of error[1] which will be consolidated for review. From the record before us, we hold that the trial court correctly concluded that the express provisions of the lease, construed in light of the circumstances, compel summary judgment as a matter of law.

The lessor is the successor in interest under a lease executed on July 10, 1946 with Burrows' predecessors for the use of commercial space in the Nottingham Building, located on Euclid Avenue in downtown Cleveland. Burrows occupied the space for the retail sale of office furniture, supplies and books. The original lease provided, *inter alia,* for fixed monthly rental payments and for an additional sum based on a percentage of gross receipts attributable to business conducted at the Nottingham location.

The lessor purchased the Nottingham Building from its predecessors in March 1974. The Nottingham Building housed Burrows' corporate offices as

---

[1] The assignments of error are:

I

"The court erred in granting summary judgment when, as a matter of law, in the absence of a substantial adequate minimum rental in a percentage lease, covenants may be inferred requiring the lessee to use reasonable efforts to generate sales at the leased premises and to conduct its business fairly and in good faith."

II

"The court erred in failing to find that as a matter of law the lessee is obligated under a percentage lease to act in good faith and deal fairly with the lessor so as not to evade its percentage rental obligations by purposefully diverting sales from the leased premises."

III

"The court erred in granting summary judgment when there were genuine issues of material fact as to whether the percentage lease guaranteed a substantial adequate minimum rental and whether the lessee purposefully diverted sales from the leased premises."

well as its warehouses until August 1974, when the lessee transferred some of its operations, including its corporate staff, to a new, separate facility located on Van Epps Boulevard in Brooklyn Heights, Ohio. The lessee continued to operate its store on the Nottingham premises until termination of the lease in October 1979. No receipts from sales made at the new location, including receipts from phone sale orders taken there, were included in computing the percentage rental due on the Nottingham premises.

The lessor filed the instant action on April 1, 1983 against the Higbee Company, the successor in interest to the original Burrows Brothers Guardian Company in 1969, and Burrows, the successor to Higbee's interests in 1973. The complaint alleged that the lessee had breached numerous express covenants in the lease between 1946 and 1979, when the lease was cancelled. The Higbee Co. was subsequently dismissed, and the complaint was reduced to a single issue: the liability of the lessee to the lessor for lost telephone sales opportunities at Nottingham as a result of the August 1974 transfer of Burrows' corporate staff to the Van Epps location. Burrows answered and then moved for summary judgment, contending that nothing in the lease obligated it to include Van Epps telephone sales in computing percentage rentals for the premises leased from Associates. In opposition, the lessor contended that opportunities for phone order sales at the Nottingham location were diminished after the transfer of staff operations to Van Epps, primarily because an accompanying publicity campaign intentionally diverted telephone sales to Van Epps. The lessor posits that an implied covenant should be engrafted onto the lease, mandating the lessee to maintain the same opportunities for phone sales at the Nottingham location

after the transfer as before. The trial court granted the lessee's motion, and dismissed the complaint. This appeal followed.

In construing and interpreting the provisions of percentage leases, the courts have applied traditional contract principles. *Myers* v. *East Ohio Gas* (1977), 51 Ohio St. 2d 121, 5 O.O. 3d 103, 364 N.E. 2d 1369; Annotation, Calculation of Rental Under Commercial Percentage Lease (1974), 58 A.L.R. 3d 384. The object of contract construction and interpretation is to ascertain and effectuate the intent of the parties to the agreement when drafted. This intent is determined by the language of the lease, in relation to its objectives, and the surrounding circumstances.

Implied covenants in leases are disfavored at law, and are justified only when necessary to effectuate the intentions of the parties, and certainly not where the subject matter is clearly delineated in the contract. The law in Ohio on the subject is expressed in a decision by the Court of Common Pleas of Sandusky County:

" 'The implication must arise from language used or it must be indispensible to effectuate intention of parties. It must appear from language used that it was so clearly within contemplation of parties that they deemed it unnecessary to express it. Implied covenants can only be justified on grounds of legal necessity. Promise can be implied only where it can be rightfully assumed that it would have been made if attention had been called to it. There can be no implied covenant where subject is completely covered by the contract.' " *Kretch* v. *Stark* (C.P. 1962), 92 Ohio Law Abs. 47, 61, 26 O.O. 2d 385, 392, 193 N.E. 2d 307, 315.

The Nottingham lease provides that, in addition to a guaranteed minimum rental, the lessee is required to pay a specified percentage of gross

receipts based on sales made from the leased premises. Sales from telephone orders are expressly included in the lease definition of gross receipts for the purpose of calculating percentage rental payments. Paragraph 3 of the lease requires the lessee to conduct its business continuously on the leased premises. Paragraph 15 of the lease permits the lessee to open additional stores at locations other than Nottingham so long as the stores are outside a designated restricted area. This provision restricts the lessee to a single store in the Nottingham area bounded on the north by the north side of Superior Avenue, on the east by the east side of East 9th Street, on the south by the south side of Prospect Avenue, and on the west by the west side of Ontario Street.

This provision clearly demonstrates that the original parties contemplated the eventuality of additional Burrows business operations off the Nottingham premises. This anticipation is corroborated by the deposition testimony of Burrows' President John Malloy, attached to Burrows' motion for summary judgment:

"Q. What operations had been at the Van Epps location before this relocation in August of 1974?

"A. It was a new building.

"Q. Okay.

"A. We had leased it and had it built for our own purposes, so it was an empty shell and a new building. Which, I think we had 19 locations at that time, and we were looking to expand, which we did, to 38 locations, and the downtown facility operating out of the catacombs was inadequate with one dock in the back alley to handle the receiving and the distribution of the products to the stores, and we were, you know, the prime purpose of the move was to set us up for future growth out into the suburbs where the people were going."

The lease contains no provision requiring receipts from sales operations conducted off the leased premises to be included in the calculation of percentage rental payments. Nor does the lease specify the amount of sales to be made from the leased premises; or that portion of Burrows' total business operation to be conducted at the leased premises; or that the lessee is required to conduct its business on the leased premises so as to obtain the greatest profits for the landlord. Nothing in the lease prevents Burrows from relocating any of its operations to another location as long as it continuously conducts business at the Nottingham location. Had the parties intended to obligate the lessee to refrain from relocating operations to a location which might impede sales opportunities at the Nottingham location, or to maintain a certain level of operations at the Nottingham location, they could have expressed such an understanding in their agreement.

While the lessor concedes that the parties anticipated that the lessee might open branch stores, it nevertheless maintains that the lease does not expressly cover the relocation and diversion of telephone sales in particular. The lessor is making a distinction without a difference. The terms of the lease did not require the lessee to include any sales, telephone or otherwise, made by the lessee at locations other than Nottingham in determining the base against which percentage rental is computed.

In support of its position favoring an implied covenant to maintain a certain level of telephone sales at the leased premises, the lessor cites cases in which courts have reasoned that an implied covenant will not be inferred in a gross receipt percentage lease with no express covenant to use and occupy, which contains a fixed, substantial,

adequate minimum rent. See, *e.g., Kretch, supra.*

The lessor posits that since the Nottingham lease contains a continuous use clause, and since a factual question exists concerning whether the fixed monthly rental payments in the lease were substantial and adequate, it cannot be said as a matter of law that no implied covenant exists. We disagree.

It is true that covenants are implied only when the parties have not expressly provided that the lessee will continuously operate a business on the premises so that there will be sales upon which a percentage rental clause may operate. See, *e.g., Bastian* v. *Albertson's, Inc.* (1982), 102 Idaho 909, 911-912, 643 P. 2d 1079, 1081-1082; *PBJ Co.* v. *Ben Duthler, Inc.* (1979), 89 Mich. App. 767, 282 N.W. 2d 216. However, courts will not imply covenants which would restrict the operation of additional stores, so as to secure maximum profits for the lessor or to protect the lessor from the loss of some gross receipts. See, *e.g., Percoff* v. *Solomon* (1953), 259 Ala. 482, 489-492, 67 So. 2d 31, 38-41; *Stop & Shop, Inc.* v. *Ganem* (1964), 347 Mass. 697, 702-707, 200 N.E. 2d 248, 251-254; *Hicks* v. *Whelan* (1955), 131 Cal. App. 2d 110, 280 P. 2d 104. The court in *Kretch, supra,* rejected the argument that a promise to pay percentage rent carries with it an implied obligation on the part of the tenants to maintain a certain level of business. Actually, the *Kretch* court held that such an obligation can only arise from the express language of the lease. 92 Ohio Law Abs. at 57-62, 26 O.O. 2d at 390-393, 193 N.E. 2d at 313-316.

The Nottingham lease set forth the obligations of the parties in detail. We decline to place an implied covenant on a lease whose plain language calls for percentage rental payments based solely upon the premises specified in the lease, and which does not require the inclusion of gross sales from operations in other locations. Further, we find that the percentage relationship of base rent to total rent is not determinative of the lessee's duties, but is merely one of many factors to be considered in determining the parties' intent. Accord *Taylor* v. *Universal Tire, Inc.* (Tenn. App. 1984), 672 S.W. 2d 775, 779.

While we will not infer the covenant the lessors seek to engraft upon the lease, we do agree, after an examination of the lease as a whole, that its content prohibits the lessee from unreasonably diverting business to another location merely to reduce liability for rent. To support its claim that Burrows unreasonably and in bad faith diverted business to reduce its rental obligation, the lessor attached exhibits to its brief to show that the lessee actively publicized that Van Epps was the sole location at which customers were to place telephone orders. It is the lessee's position that, since this evidence conflicted with Malloy's deposition testimony concerning the reason for the transfer of operations, a factual question existed which precluded summary judgment.

We find no evidence indicating that the diversion of business from the leased premises was unconscionable or made in bad faith. Therefore, no justification exists for implying a covenant at variance with the express permission granted by the lease to operate competing stores. The lessee was free to transfer parts of its business to other locations if reasonable business judgment so dictated. Malloy's deposition testimony demonstrates that the Nottingham facility was inadequate to handle the shipping and receiving of goods; that the increased promotional activity conducted after the transfer of operations to Van Epps was aimed at increasing the sales at all of the

lessee's branch stores; and that the lessee's business predominantly came from walk-in traffic rather than from telephone and mail order sales.

Percentage leases are generally entered to allow a landowner to obtain a rental fairly based on the value of the location of the leased premises. See 58 A.L.R. 3d at 397. Thus, it can be presumed that all receipts representing profit-making transactions reasonably related to the location factor are to be included in the calculation. *Id.* We do not consider telephone sale order transactions to be necessarily attributable to the location factor.

Finally, when construing a contract, courts are free to adopt a reasonable construction which the parties themselves, by their actions, have placed upon it. In the instant case, the transfer of operations to Van Epps occurred only five months after Associates purchased the Nottingham Building from its predecessors in March 1974. The parties continued their relationship until October 1979. The lessor voiced no objection concerning the Van Epps location until it filed this complaint in 1983. Thus, for five years the lessor received payments which excluded Van Epps telephone sales receipts from the computation of percentage rental due without objection. The interpretation of the contract demonstrated by the parties' conduct is additionally persuasive in our determination that such receipts were properly excluded from computation.

Since we hold that the covenant the lessor seeks to imply is obviated by the express provisions contained in the lease, we find that the trial court correctly refused to imply a covenant as a matter of law. To imply a provision mandating Burrows to maintain the "same opportunities" for sales at the leased premises throughout the term of the lease after developing a new location would operate to increase percentage rental payments in excess of the amount contemplated by the parties. Courts are not permitted to rewrite leases in this fashion. *Kretch, supra.*

For the foregoing reasons, the trial court properly granted summary judgment in favor of the lessee.

*Judgment affirmed.*

JACKSON, P.J, and KRUPANSKY, J., concur.