**GMS MANAGEMENT CO., INC. et al., Appellants,**

v.

**PICK–N–PAY SUPERMARKETS, INC. et al., Appellees.**

[Cite as *GMS Mgmt. Co. v. Pick–N–Pay Supermarkets* (1991), 77 Ohio App.3d 39.]

Court of Appeals of Ohio,
Lake County.

No. 90–L–15–107.

Decided Sept. 3, 1991.

*Paul G. Greenberger*, for appellants.

*Edward Kancler* and *Eric Larson Zalud*, for appellees.

CHRISTLEY, Presiding Judge.

This is an accelerated appeal from a decision of the Lake County Court of Common Pleas, granting summary judgment in favor of appellees, Pick-n-Pay Supermarkets and First National Supermarkets. Although this case was originally treated as an accelerated case, the depth of the first assignment of error requires a full opinion in response.

Appellant, GMS Management, is an Ohio corporation engaged in the business of managing certain commercial and residential real estate. As part of this business, GMS Management operates a property known as the "Willo–Plaza Shopping Center," located on Euclid Avenue in Willoughby, Ohio. This property is owned by Stuart Graines in his capacity as a trustee for an investment group. Graines is also an appellant in this appeal.

In February 1974, Pick-n-Pay entered into an agreement to lease certain premises located in the shopping center. The lease provided for an initial term of fifteen years, plus three separate options to renew for five years per option. For rent, Pick-n-Pay agreed to pay the sum of $61,440 per year, plus an additional amount equal to one percent of the annual gross sales over $6,252,000 per year.

Approximately four years after the supermarket was opened, First National became the successor in interest in the lease. Thereafter, First National operated the supermarket under the name "Pick-n-Pay." Then, in October 1988, First National gave notice of its intent to exercise its first option, thereby extending the duration of the lease to April 1994.

In January 1990, appellants initiated the instant action against appellees. In their verified complaint, appellants alleged that as of June 1989, appellees

had vacated the leased premises and had opened a new supermarket in Mentor, Ohio. The complaint further alleged that the vacation of the leased premises violated express and implied covenants in the lease. For relief, appellants sought, *inter alia,* an order requiring appellees to reopen the supermarket and continue to occupy the leased premises throughout the remainder of the lease.

After appellees had answered, appellants moved for partial summary judgment as to the issue of whether appellees were required under the lease to continue to operate a supermarket on the leased premises. In support of this motion, appellants argued that the "use" clause in the lease constituted an express covenant to "occupy and use" the premises until the end of the option period. They attached a copy of the lease at issue.

Upon responding to appellants' motion, appellees moved for summary judgment as to the entire complaint. Appellees' motion was based upon two arguments: (1) that the lease did not contain an express continuous operation clause; and (2) that the provisions in the lease and the surrounding circumstances did not support the finding of an implied continuous operation clause. As to the "use" clause contained in the lease, appellees maintained that this provision merely described a permitted use rather than a mandatory use of the premises.

In support of their motion, appellees submitted and incorporated copies of leases of various other tenants in the shopping center. These leases contained specific clauses, in addition to the "use" clauses, which provided that the tenants were required to continuously use the premises for the stated purposes throughout the entire term.

In responding to appellees' motion, appellants moved for an oral hearing on the competing motions for summary judgment. The trial court never ruled on the motion for oral hearing, nor was an oral hearing ever held.

In July 1990, the trial court issued a judgment entry, denying appellants' motion and granting summary judgment in favor of appellees. In support of this decision, the court merely cited the case of *Weil v. Ann Lewis Shops, Inc.* (Tex.Civ.App.1955), 281 S.W.2d 651.

On appeal from this judgment, appellants have advanced the following assignments of error:

"1. The trial court committed reversible error by holding that a lease provision is *restrictive* rather than *mandatory* which requires that * * * 'lessee shall occupy and use the Premises for the operation of a supermarket and related uses, including the sale of groceries * * * and other products ordinarily sold by Lessee in a substantial number of its stores, and such other

items of merchandise as may be sold by other supermarkets in Cuyahoga and Lake Counties and for no other purpose.'

"2. A trial court can compel specific enforcement of such a lease clause by injunction, *to wit:* ordering the store to reopen and operate as a supermarket.

"3. The trial court abused its discretion by disposing of Assignment of Error I upon cross motions for summary judgment, without conducting a mutually requested oral hearing."

Although worded in relation to the exact issue which was before the trial court, appellants' first assignment essentially challenges the merits of the court's decision granting summary judgment in favor of appellees. Consistent with the language of Civ.R. 56(C), the Ohio Supreme Court has held that summary judgment can only be granted when: (1) there is no genuine issue of fact remaining to be tried; (2) as a matter of law, the moving party is entitled to judgment; and (3) the state of the record is such that when the evidence is viewed "most strongly" in favor of the opposing party, reasonable minds could only reach a conclusion in favor of the moving party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471, 364 N.E.2d 267, 273.

In the instant case, the basic facts of the situation were not in dispute. Through their pleadings, the parties agreed that their landlord-tenant relationship was governed by the lease which was attached to appellants' complaint. Thus, the only issue before the trial court, and the primary issue before this court, was whether, as a matter of law, appellees were obligated under the lease to continuously occupy and use the premises throughout the entire term. For the reasons which follow, this court concludes that they were not so obligated.

In arguing for the opposite conclusion, appellants rely solely upon the language of the "use" clause in the lease. As was noted above, this provision stated that appellees "shall occupy and use the PREMISES for the operation of a super market and related uses, * * * and for no other purpose." Appellants contend that this language expressly imposed the obligation in question. Specifically, appellants maintain that this clause constituted a mandatory "use" provision, as compared to a restrictive "use" provision. However, as will be discussed later, the quote as provided, does not reflect an accurate synopsis of the sentence.

In its judgment entry, the trial court did not specifically address the merits of this issue. The court simply cited *Weil, supra,* and then granted appellees' motion. In attacking this judgment, appellants first submit that the court's reliance upon this decision was misplaced. We disagree.

In *Weil,* the clause at issue provided that the premises were to be leased "for occupation and use as Ladies', Misses' and Children's ready-to-wear and accessories and not otherwise." In interpreting this language, the court held: "Clauses similar to this one have been construed in many cases, and it has never been held to be an agreement to occupy and use the demised premises, but only to restrict the purposes for which the premises may be used." *Id.,* 281 S.W.2d at 654. The *Weil* court clearly interpreted the specific provision as a restrictive "use" clause, rather than a mandatory "use" clause. It also held that an implied covenant for continuous use could not be inferred from the lease as a whole.

In attempting to distinguish this case, appellants emphasized that the *Weil* clause did not contain the phrase "for the operation of a [store] * * * for the sale of [merchandise]," as did the clause in the instant case (we would note that this is a less than accurate quote of the language of the instant lease).

Even so, it is clear from the language of the *entire* sentence in the instant case that the foregoing phrase was merely meant to modify the phrase "occupy and use," which is the critical part of the instant clause:

"LESSEE shall *occupy and use* the PREMISES *for the operation* of a supermarket and related uses, including the sale of groceries, meats, produce, baked goods and other food stuff, candies, tobacco products, wine, liquor, beer, toilet goods, flowers, hosiery, household supplies and appliances, drugs (except prescriptions), and other products ordinarily sold by LESSEE in a substantial number of its stores, and such other items of merchandise as may be sold by other supermarkets in Cuyahoga and Lake Counties *and for no other purpose.*" (Emphasis added.)

Thus, for purposes of interpreting the effect of the provision, there is no distinction between the *Weil* clause and the instant clause.

To support their position that the instant clause required a mandatory use of the premises, appellants rely heavily upon the decision in *Ingannamorte v. Kings Super Markets, Inc.* (1970), 55 N.J. 223, 260 A.2d 841. There, the "use" clause provided that the leased store was "to be used and occupied only for a supermarket * * *." Appellants contend that the *Ingannamorte* court interpreted this provision to be an *express* mandatory use clause.

However, a thorough review of this decision indicates that the court did not conclude that the clause expressly provided for mandatory continuous use, but that such a covenant should be implied. This latter conclusion was based upon the court's reading of the lease as a whole and a consideration of the circumstances surrounding the negotiation of the lease.

The *Ingannamorte* decision is typical of many of the cases that the parties have cited, in that the requirement of continuous use is implied. As in *Ingannamorte*, the finding of an implied covenant is usually based upon the presence of certain types of clauses in the lease and the surrounding circumstances.

The seminal Ohio case on implied covenants of continuous use is *Kretch v. Stark* (C.P.1962), 92 Ohio Law Abs. 47, 26 O.O.2d 385, 193 N.E.2d 307. In that case, the lessee was required to pay a fixed amount of rent per month, plus a percentage of the annual gross sales. After reviewing the relevant case law from other states, the court held:

"Where a lease provides for rental based on a percentage of sales with a *fixed substantial adequate minimum* and there is no express covenant or agreement to occupy and use the premises, no implied covenant or agreement will be inferred that the lessee is bound to occupy and use the premises for the purpose expressed in the lease. Under such a lease, lessee has no obligation to occupy and use the premises for any stated definite period of time and his obligation under such a lease is limited to the payment of the basic minimum rental to the end of the term when he no longer occupies and uses the premises for the purpose expressed in the lease." (Emphasis *sic*.) *Id.* at 62, 26 O.O.2d at 393, 193 N.E.2d at 316.

In the instant case, appellees are required under the lease to pay a base rent of $61,440 per year. Pursuant to Clause 5 of the lease, appellees also are required to pay an additional sum of one percent of the annual gross sales which exceeds $6,252,000. Accordingly, the determination of whether the base rent constituted a substantial adequate minimum would require the production of evidence which would indicate the proportion between the average rental amount previously paid under the percentage rent clause and the base rent.

However, in moving for partial summary judgment, appellants did not submit any evidentiary materials concerning this issue. In fact, before both this court and the trial court, appellants have expressly declined to argue that a mandatory "use" covenant can be implied in this instance. Given appellants' stance and the lack of evidence in the record, this court has limited its review to the specific issue which is raised in the assignment: Does the lease contain an express mandatory "use" provision?

In support of their contention that the "use" clause in the instant lease is a mandatory "use" provision, appellants have also referred to a number of cases in which the implied covenant for continuous use was described as requiring the lessee to "occupy and use" the premises. However, these cases are not relevant to the issue of whether the inclusion of the phrase "occupy and use"

is sufficient to change what appears to be a restrictive "use" clause into a mandatory "use" clause.

Under both *Weil* and *Ingannamorte*, the use of the phrase "occupy and use" was deemed insufficient to require mandatory use. Thus, the trial court did not err in concluding that the instant lease did not expressly require appellees to "occupy and use" the leased premises throughout the entire life of the lease.

Two unreported cases concerning the same issue are currently awaiting hearing before the Ohio Supreme Court, *Warren Plaza Co. v. Giant Eagle, Inc.* (June 15, 1990), Trumbull App. No. 88–T–4122, unreported, 1990 WL 82537; and *Fodor v. First Natl. Supermarkets, Inc.* (July 5, 1990), Cuyahoga App. No. 58587, unreported, 1990 WL 93210.[1] Both of those cases involve a reversal of the trial court's decision favoring the respective lessors. In each case, the contracts lacked any specific clause dealing with a requirement of continuous use as a supermarket retail facility. In the *Warren Plaza* case, there was an annual fixed rent, but there was no additional rent based on any percentage of sales. In the *First Natl.* case, there was an annual fixed rent of $80,000 per year with a percentage rate of one percent on all gross sales in excess of $11 million dollars. The *First Natl.* court also noted that the lease in question "did not represent or guarantee any specific volume of sales at the location or the operation of a business at the space." *Id.* at 5.

The rationale expressed by the respective appellate courts in those two pending Ohio Supreme Court appeals is in line with our reasoning in the instant assignment.

Appellants' first assignment is without merit.

■ Under their second assignment, appellants contend that had the court concluded that the "use" clause was an express mandatory use provision, then it should have ordered appellees to reopen the supermarket on the leased premises. The authority which appellants cite seems to support this proposition. Nevertheless, this issue was never reached by the trial court and, so, will not be addressed by this court as it would constitute an advisory opinion. Accordingly, this assignment is also without merit.

■ Under their final assignment, appellants submit that the trial court erred in not holding a hearing on the competing motions for summary judgment. Specifically, appellants argue that the complexity of the issue and

---

1. Reporter's Note: The *Warren Plaza* case was dismissed as moot in (1992), 63 Ohio St.3d 497, 589 N.E.2d 23, and the judgment in the *First Natl.* case was affirmed on other grounds in (1992), 63 Ohio St.3d 489, 589 N.E.2d 17.

the nature of the evidence before the court was such that a hearing was warranted.

As both parties correctly note, the decision to hold an oral hearing on a motion for summary judgment is a matter within the discretion of the trial court. *Gates Mills Investment Co. v. Pepper Pike* (1978), 59 Ohio App.2d 155, 13 O.O.3d 191, 392 N.E.2d 1316. After reviewing the record in this case, this court is not convinced that the nature of the evidentiary materials were such that a hearing was needed. As mentioned earlier, the basic facts of this case were not in dispute. Moreover, the parties submitted exhaustive briefs on the legal issue raised in the motions.

Given the circumstances, this court concludes that the trial court did not abuse its discretion in not holding an oral hearing in this case. Accordingly, appellants' third assignment is not well taken.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

HENDRICKSON and BASINGER, JJ., concur.

WILLIAM R. HENDRICKSON, J., retired, of the Twelfth Appellate District, sitting by assignment.

RANDALL L. BASINGER, J., of the Putnam County Court of Common Pleas, sitting by assignment.