[Civ. No. 3019.  Second Appellate District, Division Two.—October 20, 1919.]

HARRY S. VAN DEMARK, Respondent, v. CALIFORNIA HOME EXTENSION ASSOCIATION (a Corporation), et al., Appellants.

[1] CONTRACTS—"DISSATISFACTION CLAUSES"—EXERCISE OF RIGHT.— The distinction is well recognized—though the line cannot always be very clearly drawn—in actions arising on "dissatisfaction clauses" of contracts that where the right involved is one which is submitted to the taste or fancy, feeling, or judgment of the party in whose favor the option is given, it may be exercised without any practical or utilitarian reason; but when it is apparent that the question of satisfaction relates to the commercial value or quality of the subject matter of the contract, it must be shown that it is deficient or defective in these respects, and that the dissatisfaction is reasonable and well founded.

[2] ID.—GENERAL RULE—PARTY TO BE JUDGE—GOOD FAITH.—Where there is nothing to justify the contrary construction, the general rule is that the party to be satisfied is the judge of his own satisfaction, subject only to the limitation in most jurisdictions that he must act in good faith; and if he does so act and is really dissatisfied, he may reject the work or the article on the ground that it is not satisfactory to him.

[3] ID.—PERSONAL DISSATISFACTION OF BUYER—ELEMENT OF VALUES OR QUALITY IMMATERIAL.—Where it is clear that the purpose of an agreement to repurchase in the event the buyer should become "dissatisfied with the investment" is to submit the matter to the personal option and judgment of the purchaser, the exercise of this right is not dependent upon a failure in value of the property, or

a breach of any condition of the contract. It is made a question alone of the buyer's dissatisfaction with the "investment"—a matter which might develop into a condition of personal dissatisfaction entirely independent of values or quality.

[4] Id.—Effect of Fulfillment of Agreement.—The fulfillment of the terms of such an agreement does not involve the loss of the vendor's property, but amounts only to a rescission. He gets his property back and refunds the purchase money with interest.

[5] Id.—Dissatisfaction With Investment—Pleading.—In an action by the buyer under such a contract it is sufficient to allege that he became dissatisfied with the investment, without alleging any facts as reasons or grounds for such dissatisfaction.

[6] Id.—Limit of Obligation to Repurchase—Time—Construction of Agreement.—An agreement to repurchase "at any time between the fifth and sixth year from the date of planting" does not limit the obligation to repurchase to the infinitesimal period between the close of the last day of the fifth year and the beginning of the first day of the sixth year, but to the period between the last of the fifth and the last of the sixth year—or during the sixth year.

[7] Id.—Reasonable Construction.—It is a well-settled principle applicable to the construction of contracts that where one construction would make the contract unreasonable, unfair, unusual, and extraordinary, and another construction equally consistent with the language would make it reasonable, fair, and just, the latter construction is the one which must be adopted.

[8] Id.—Construction of—Surrounding Circumstances.—Where contracts are ambiguous, the circumstances surrounding and known to both parties at the time of the execution of the contract may be taken into consideration in determining the meaning intended to be conveyed.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred. H. Taft, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. T. Quinn for Appellants.

Bowen & Bailie for Respondent.

SLOANE, J.—The only questions on this appeal arise on the construction and application of provisions in a contract for the sale of land, whereby it is agreed that in the event of the purchaser becoming dissatisfied with the investment the seller shall buy back the land.

The complaint contained two causes of action, based on agreements to repurchase, under separate contracts for the sale of separate tracts, and judgment was against the defendants, appellants here. The repurchase clause in the first contract is as follows: "Art. 10. If after completion of payments the buyer should be dissatisfied with the investment, the association stands ready at any time between the fifth and sixth year from date of planting to buy back the land by paying the buyer the amount of the purchase price." The second provides: "Art. 6. If after completion of purchase the buyer should be dissatisfied with the investment, the association guarantees at any time during the sixth year following date of this contract . . . to buy back the land." It will only be necessary to incidentally refer to any other subject matter of these contracts, as no dispute exists on any other of the conditions pleaded.

The complaint also contains an allegation that within the period specified in the contracts plaintiff became dissatisfied with his investments, and so notified the defendant corporation, and demanded that the agreement to repurchase be fulfilled. No facts are stated as to reasons or grounds for dissatisfaction with the investment. Defendants urged on demurrer that without some showing of reasonable grounds for dissatisfaction the complaint does not state a cause of action, and the overruling of this demurrer is one of the alleged errors on appeal. It is claimed by respondent that certain facts set up in the answer gave substantial reasons for dissatisfaction with the investment, thus supplementing the complaint, and there was evidence introduced on this point; but the court found that the matters pleaded in the answer were not true, and as no error is claimed as to such finding, the question is purely one of law as to whether under the terms of this agreement it was incumbent on the plaintiff to plead and prove facts constituting reasonable grounds for dissatisfaction with his investment.

[1] The distinction is well recognized—though the line cannot always be very clearly drawn—in actions arising on these "dissatisfaction clauses," that where the right involved is one which is submitted to the taste or fancy, feelings, or judgment of the party in whose favor the option is given, it may be exercised without any practical or utilitarian reason; but when it is apparent that the

question of satisfaction relates to the commercial value or quality of the subject matter of the contract, it must be shown that it is deficient or defective in these respects, and that the dissatisfaction is reasonable and well founded. [2] "But where there is nothing to justify the contrary construction, the general rule is that the party to be satisfied is the judge of his own satisfaction, subject only to the limitation in most jurisdictions that he must act in good faith; and if he does so act and is really dissatisfied, he may reject the work or the article on the ground that it is not satisfactory to him." (*Tiffany* v. *Pacific Sewer Pipe Co.*, 180 Cal. 700, [182 Pac. 428].) Such construction of the rule has been applied to contracts for a suit of clothes, a portrait, a musical instrument, a carriage, a steam heater, a literary article for a magazine, horses, employment of a servant, dissatisfaction with a home furnished, and with security for performance of an obligation. (9 Cyc. 618, and citations; *Singerly* v. *Thayer*, 108 Pa. St. 291, [56 Am. Rep. 207, 2 Atl. 230]; *McCarren* v. *McNulty* (Mass.), 7 Gray, 139; *Brown* v. *Foster*, 113 Mass. 136, [18 Am. Rep. 463]; *Zaliski* v. *Clark*, 44 Conn. 218, [26 Am. Rep. 446]; *Moore* v. *Robinson*, 92 Ill. 491.) It has been held in California that an agreement to furnish title satisfactory to the purchaser was not met by a merely good and marketable title, if the purchaser himself was not satisfied. (*Parkside Realty Co.* v. *MacDonald*, 166 Cal. 426, [137 Pac. 21]; *Allen* v. *Pockwitz*, 103 Cal. 85, [42 Am. St. Rep. 99, 36 Pac. 1039]; *Church* v. *Shanklin*, 95 Cal. 626, [17 L. R. A. 207, 30 Pac. 789].)

The contracts considered under the decisions cited by appellant are for the most part clearly distinguishable from the contract under consideration here. They involve the quality or value of things in common use which have a fixed and recognized standard of fitness and worth, and concerning which it is fair and equitable to require a purchaser to be satisfied with the commonly accepted standard of excellence. And sometimes, too, the courts have been controlled in their rulings on this question by the equities involved in cases where the exercise of a captious and unreasonable feeling of dissatisfaction would involve the other party to the contract in serious loss or damage. (*Hawkins* v. *Graham*, 149 Mass. 284, [14 Am. St. Rep. 422,

21 N. E. 312].) **[3]** We think it is clear in this case that the purpose of the agreement to repurchase in the event the buyer should become dissatisfied with his investment was to submit the matter to the personal option and judgment of the purchaser. The exercise of this right is not dependent upon a failure in value of the property, or a breach of any conditions of the contract. It was made a question alone of his dissatisfaction with the "investment" —with that particular disposition of his capital which tied it up in this California land—a matter which might develop into a condition of personal dissatisfaction entirely independent of values or quality. **[4]** The fulfillment of the terms of the agreement, moreover, does not involve the loss of the vendor's property. It amounts only to a rescission. He gets his property back and refunds the purchase money with interest. **[5]** It was probably incumbent on the plaintiff to show good faith, and that he was really dissatisfied; but an allegation that he did become dissatisfied, which was pleaded and testified to, was sufficient. Incidentally, it appears by the plaintiff's evidence, not only that he was dissatisfied, but that he had grounds for his dissatisfaction, in that by reason of unseasonable frosts the growing eucalyptus trees on his land had been injured. The defendants pleaded, by their answer, that the injury to the premises resulting from the freeze was the fault of plaintiff, but the court found against this defense, and there was evidence to the contrary; but in any event, the finding is not made an issue on this appeal.

**[6]** Appellants further contend that the exercise of the right to demand a repurchase under the "dissatisfied" clauses of the contracts came too late, in the first instance, and too early, in the second. It is argued that the obligation to buy back the land under the first contract "at any time between the fifth and sixth year from the date of planting" was limited to the infinitesimal period between the close of the last day of the fifth year and the beginning of the first day of the sixth year. It is agreed that the date of planting referred to was the 28th of July, 1910. The declaration of dissatisfaction and demand that defendant repurchase was made on July 17, 1915—about the middle of the sixth year after the date of planting. A literal and exact interpretation of the language used would sustain

43 Cal. App.— 44

appellants' contention. But such an interpretation would be absurd and unreasonable. Inapt though the language may be, it means, in the common acceptance, the period between the last of the fifth and the last of the sixth year—or during the sixth year. As counsel for appellants admits in his brief, the contracts were doubtless drawn by and on forms prepared by the defendant corporation; and to permit the defeat of this contract by the refinement of construction here demanded would be a travesty on justice.

The contention that the demand on the second contract was premature is even more untenable. It was there provided that the defendant corporation "guarantees at any time during the sixth year following the date of this contract to buy back the land." The date of the contract was February 7, 1910. It is not the sixth year after 1910, but the sixth year after February 7, 1910, that was specified. The first year after or following the date of the contract expired February 7, 1911; and the fifth year expired February 7, 1915. The declaration and demand by plaintiff was made on the 12th of August, 1915, which was during the sixth year.

Appellants' own guns may properly be turned against them in this connection by quoting their argument and citation on another point of construction, from another part of their brief: "There is no better rule of construction than that laid down by this [supreme] court in the case of *Stein* v. *Archibald,* 151 Cal. 220, [90 Pac. 536], where it is said: [7] 'It is a well-settled principle applicable to the construction of contracts that where one construction would make the contract unreasonable, unfair, unusual, and extraordinary, and another construction equally consistent with the language would make it reasonable, fair, and just, that the latter construction is the one which must be adopted. [8] It is also a principle of construction with respect to ambiguous contracts that the circumstances surrounding and known to both parties at the time of the execution of the contract may be taken into consideration in determining the meaning intended to be conveyed.' " It is apparent that it was the intention of the parties that if, for any reason not growing out of the wrong or fraud of the purchaser, he became dissatisfied with his investment under the first contract, the vendor would repurchase at any

time during the sixth year after July 17, 1915; and if he was dissatisfied after the completion of his purchase under the second contract, that the vendor would repurchase at any time during the sixth year after date of the contract. That he did become dissatisfied with these contracts and was entitled to exercise the option given him against the defendant corporation is sufficiently pleaded and proved.

The rulings and judgment of the court are supported by the pleadings, evidence, and findings.

The judgment is affirmed.

Finlayson, P. J., and Thomas, J., concurred.