[S. F. No. 19806. In Bank. Oct. 24, 1958.]

PETER O. MATTEI, Appellant, v. AMELIA F. HOPPER,
Respondent.

Jay R. Martin and William F. Sharon for Appellant.

Carlson, Collins, Gordon & Bold, George R. Gordon, John L. Garaventa and Dean Ormsby for Respondent.

SPENCE, J.—Plaintiff brought this action for damages after defendant allegedly breached a contract by failing to convey her real property in accordance with the terms of a deposit receipt which the parties had executed. After a trial without a jury, the court concluded that the agreement was "illusory" and lacking in "mutuality." From the judgment accordingly entered in favor of defendant, plaintiff appeals.

Plaintiff was a real estate developer. He was planning to construct a shopping center on a tract adjacent to defendant's land. For several months, a real estate agent attempted to negotiate a sale of defendant's property under terms agreeable to both parties. After several of plaintiff's proposals had been rejected by defendant because of the inadequacy of the price offered, defendant submitted an offer. Plaintiff accepted on the same day.

The parties' written agreement was evidenced on a form supplied by the real estate agent, commonly known as a deposit receipt. Under its terms, plaintiff was required to deposit $1,000 of the total purchase price of $57,500 with the real estate agent, and was given 120 days to "examine the title and consummate the purchase." At the expiration of that period, the balance of the price was "due and payable upon tender of a good and sufficient deed of the property sold." The concluding paragraph of the deposit receipt provided: "Subject to Coldwell Banker & Company obtaining leases satisfactory to the purchaser." This clause and the 120-day period were desired by plaintiff as a means for arranging satisfactory leases of the shopping center buildings prior to the time he was finally committed to pay the balance of the purchase price and to take title to defendant's property.

Plaintiff took the first step in complying with the agreement by turning over the $1,000 deposit to the real estate agent. While he was in the process of securing the leases and before the 120 days had elapsed, defendant's attorney notified plaintiff that defendant would not sell her land under the terms

contained in the deposit receipt. Thereafter, defendant was informed that satisfactory leases had been obtained and that plaintiff had offered to pay the balance of the purchase price. Defendant failed to tender the deed as provided in the deposit receipt.

Initially, defendant's thesis that the deposit receipt constituted no more than an offer by her, which could only be accepted by plaintiff notifying her that all of the desired leases had been obtained and were satisfactory to him, must be rejected. Nowhere does the agreement mention the necessity of any such notice. Nor does the provision making the agreement "subject to" plaintiff's securing "satisfactory" leases necessarily constitute a condition to the existence of a contract. Rather, the whole purchase receipt and this particular clause must be read as merely making plaintiff's performance dependent on the obtaining of "satisfactory" leases. Thus a contract arose, and plaintiff was given the power and privilege to terminate it in the event he did not obtain such leases. (See 3 Corbin, Contracts (1951), § 647, pp. 581-585.) This accords with the general view that deposit receipts are binding and enforceable contracts. (Cal. Practice Hand Book, Legal Aspects of Real Estate Transactions (1956), p. 63.)

However, the inclusion of this clause, specifying that leases "satisfactory" to plaintiff must be secured before he would be bound to perform, raises the basic question whether the consideration supporting the contract was thereby vitiated. When the parties attempt, as here, to make a contract where promises are exchanged as the consideration, the promises must be mutual in obligation. In other words, for the contract to bind either party, both must have assumed some legal obligations. Without this mutuality of obligation, the agreement lacks consideration and no enforceable contract has been created. (*Shortell* v. *Evans-Ferguson Corp.*, 98 Cal.App. 650, 660-662 [277 P. 519] ; 1 Corbin, Contracts (1950), § 152, pp. 496-502.) Or, if one of the promises leaves a party free to perform or to withdraw from the agreement at his own unrestricted pleasure, the promise is deemed illusory and it provides no consideration. (See *J. C. Millett Co.* v. *Park & Tilford Distillers Corp.* [N.D. Cal.], 123 F.Supp. 484, 493.) Whether these problems are couched in terms of mutuality of obligation or the illusory nature of a promise, the underlying issue is the same—consideration. (*Ibid.*)

While contracts making the duty of performance of one of the parties conditional upon his satisfaction would seem

to give him wide latitude in avoiding any obligation and thus present serious consideration problems, such "satisfaction" clauses have been given effect. They have been divided into two primary categories and have been accorded different treatment on that basis. First, in those contracts where the condition calls for satisfaction as to commercial value or quality, operative fitness, or mechanical utility, dissatisfaction cannot be claimed arbitrarily, unreasonably, or capriciously (*Collins* v. *Vickter Manor, Inc.*, 47 Cal.2d 875, 882-883 [306 P.2d 783]), and the standard of a reasonable person is used in determining whether satisfaction has been received. (*Thomas Haverty Co.* v. *Jones*, 185 Cal. 285, 296 [197 P. 105]; *Fielding & Shepley, Inc.* v. *Dow*, 72 Cal.App.2d 18, 21 [163 P.2d 908]; *Fruit Growers Supply Co.* v. *Goss*, 4 Cal.App. 2d 651, 654 [41 P.2d 357]; *Scott Co., Inc.* v. *Rolkin*, 133 Cal. App. 209, 212 [23 P.2d 1065]; *Melton* v. *Story*, 113 Cal.App. 609, 612-614 [298 P. 1032]; *Jones-McLaughlin, Inc.* v. *Kelly*, 100 Cal.App. 315, 321-325 [279 P. 1076]; *Bruner* v. *Hegyi*, 42 Cal.App. 97, 99 [183 P. 369].) Of the cited cases, two have expressly rejected the arguments that such clauses either rendered the contracts illusory (*Collins* v. *Vickter Manor, Inc., supra*) or deprived the promises of their mutuality of obligation. (*Melton* v. *Story, supra*.) The remaining cases tacitly assumed the creation of a valid contract. However, it would seem that the factors involved in determining whether a lease is satisfactory to the lessor are too numerous and varied to permit the application of a reasonable man standard as envisioned by this line of cases. Illustrative of some of the factors which would have to be considered in this case are the duration of the leases, their provisions for renewal options, if any, their covenants and restrictions, the amounts of the rentals, the financial responsibility of the lessees, and the character of the lessees' businesses.

This multiplicity of factors which must be considered in evaluating a lease shows that this case more appropriately falls within the second line of authorities dealing with "satisfaction" clauses, being those involving fancy, taste, or judgment. Where the question is one of judgment, the promisor's determination that he is not satisfied, when made in good faith, has been held to be a defense to an action on the contract. (*Tiffany* v. *Pacific Sewer Pipe Co.*, 180 Cal. 700, 702-705 [182 P. 428, 6 A.L.R. 1493]; *Brenner* v. *Redlick Furniture Co.*, 113 Cal.App. 343, 346-347 [298 P. 62]; *Kendis* v. *Cohn*, 90 Cal.App. 41, 66-68 [265 P. 844]; *Schuyler* v.

**124**

*Pantages,* 54 Cal.App. 83, 85-87 [201 P. 137]; see also *Van Demark* v. *California H. E. Assn.,* 43 Cal.App. 685, 687-689 [185 P. 866].) Although these decisions do not expressly discuss the issues of mutuality of obligation or illusory promises, they necessarily imply that the promisor's duty to exercise his judgment in good faith is an adequate consideration to support the contract. None of these cases voided the contracts on the ground that they were illusory or lacking in mutuality of obligation. Defendant's attempts to distinguish these cases are unavailing, since they are predicated upon the assumption that the deposit receipt was not a contract making plaintiff's performance conditional on his satisfaction. As seen above, this was the precise nature of the agreement.

Even though the "satisfaction" clauses discussed in the above-cited cases dealt with performances to be received as parts of the agreed exchanges, the fact that the leases here which determined plaintiff's satisfaction were not part of the performance to be rendered is not material. The standard of evaluating plaintiff's satisfaction—good faith—applies with equal vigor to this type of condition and prevents it from nullifying the consideration otherwise present in the promises exchanged.

Moreover, the secondary authorities are in accord with the California cases on the general principles governing "satisfaction" contracts. "It has been questioned whether an agreement in which the promise of one party is conditioned on his own or the other party's satisfaction contains the elements of a contract—whether the agreement is not illusory in character because conditioned upon the whim or caprice of the party to be satisfied. Since, however, such a promise is generally considered as requiring a performance which shall be satisfactory to him in the exercise of an honest judgment, such contracts have been almost universally upheld." (3 Williston, Contracts (rev. ed. 1936), § 675a, p. 1943; see also 3 Corbin, Contracts (1951), §§ 644, 645, pp. 560-572.) "A promise conditional upon the promisor's satisfaction is not illusory since it means more than that validity of the performance is to depend on the arbitrary choice of the promisor. His expression of dissatisfaction is not conclusive. That may show only that he has become dissatisfied with the contract; he must be dissatisfied with the performance, as a performance of the contract, and his dissatisfaction must be genuine." (Rest., Contracts (1932), § 265, comment *a.*)

If the foregoing cases and other authorities were the

only ones relevant, there would be little doubt that the deposit receipt here should not be deemed illusory or lacking in mutuality of obligation because it contained the "satisfaction" clause. However, language in two recent cases led the trial court to the contrary conclusion. The first case, *Lawrence Block Co.* v. *Palston*, 123 Cal.App.2d 300 [266 P.2d 856], stated that the following two conditions placed in an offer to buy an apartment building would have made the resulting contract illusory "O.P.A. Rent statements to be approved by Buyer" and "Subject to buyer's inspection and approval of all apartments." These provisions were said to give the purchaser "unrestricted discretion" in deciding whether he would be bound to the contract and to provide no "standard" which could be used in compelling him to perform. (123 Cal. App.2d at pp. 308-309.) However, this language was not necessary to the decision. The plaintiff in Lawrence Block Company was a real estate broker seeking a commission, his right to which depended upon the existence of a binding agreement between the buyer and seller. The seller had not accepted the buyer's offer as originally written, but had added other conditions. This change constituted a counter-offer. Since the latter was not accepted by the buyer, no binding contract was created and the broker was not entitled to his commission.

The other case, *Pruitt* v. *Fontana*, 143 Cal.App.2d 675 [300 P.2d 371], presented a similar situation. The court concluded that the written instrument with a provision making the sale of land subject to the covenants and easements being "approved by the buyers" was illusory. It employed both the reasoning and language of *Lawrence Block Co.* in deciding that this clause provided no "objective criterion" preventing the buyers from exercising an "unrestricted subjective discretion" in deciding whether they would be bound. (143 Cal.App.2d at pp. 684-685.) But again, this language was not necessary to the result reached. The buyers in *Pruitt* refused to approve all of the easements of record, and the parties entered into a new and different oral agreement. The defendant seller was held to be estopped to assert the statute of frauds against this subsequent contract, and the judgment of dismissal entered after the sustaining of demurrers was reversed.

While the language in these two cases might be dismissed as mere dicta, the fact that the trial court relied thereon re-

quires us to examine the reasoning employed. Both courts were concerned with finding an objective standard by which they could compel performance. This view apparently stems from the statement in *Lawrence Block Company* that "The standard 'as to the satisfaction of a reasonable person' does not apply where the performance involves a matter dependent on judgment." (123 Cal.App.2d at p. 309.) By making this assertion without any qualification, the court necessarily implied that there is no other standard available. Of course, this entirely disregards those cases which have upheld "satisfaction" clauses dependent on the exercise of judgment. In such cases, the criterion becomes one of good faith. Insofar as the language in *Lawrence Block Company* and *Pruitt* represented a departure from the established rules governing "satisfaction" clauses, they are hereby disapproved.

We conclude that the contract here was neither illusory nor lacking in mutuality of obligation because the parties inserted a provision in their contract making plaintiff's performance dependent on his satisfaction with the leases to be obtained by him.

The judgment is reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Schauer, J., concurred.

McComb, J., dissented.