[No. B044557. Second Dist., Div. Four. Dec. 12, 1990.]

BEVERLY WAY ASSOCIATES, Plaintiff and Appellant, v.
PHYLLIS BARHAM, Defendant and Respondent.

## COUNSEL

Inman, Weisz & Steinberg and Drew E. Pomerance for Plaintiff and Appellant.

Judith E. Deming for Defendant and Respondent.

## OPINION

EPSTEIN, J.—This case presents a single principal issue for resolution. ■ It is whether, in a contract for the sale of real estate, the buyer's communicated rejection of a "satisfaction" condition precedent to its obligation to purchase terminates the contract so that the buyer cannot later waive the condition and enforce the agreement. We conclude that it does. We therefore affirm the decision of the trial court, which reached the same conclusion in its order sustaining a demurrer to the buyer's suit to enforce the contract.

### FACTUAL AND PROCEDURAL SUMMARY

This case reaches us on the basis of a successful assertion of a general demurrer without leave to amend. ■ "In assessing the sufficiency of a

complaint against a general demurrer, we must treat the demurrer as admitting all material facts properly pleaded." (*Glaire* v. *LaLanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 [117 Cal.Rptr. 541, 528 P.2d 357].) Since the demurrer was sustained without leave to amend, we are also mindful of the policy that "the allegations of the complaint must be liberally construed with a view to obtaining substantial justice among the parties." (*Youngman* v. *Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 244-245 [74 Cal.Rptr. 398, 449 P.2d 462].)

The verified complaint in this case incorporates a series of documents by reference that thoroughly chronicle the agreement of the parties. The following summary is based on that pleading, including its incorporated annexes.

In July 1988, the defendant Phyllis Barham (seller) owned a residential building in Long Beach. On July 7, 1988, she executed a contract to sell the building to plaintiff, Beverly Way Associates, a California general partnership (buyer). The purchase price was $3.9 million. The contract provided for the opening of escrow and for a closing within 60 days thereafter. There was no "time is of the essence" provision.

Paragraph 5 of the agreement (contingencies) provided that the "Buyer's obligations to purchase the Property shall be conditioned upon" approval by the buyer of a number of specified inspections and documents, and delivery of clear title and conveyance documents at the close of escrow. The most important provision in the agreement, for purposes of our review, is paragraph 5(a) (Approval by Buyer of Inspection and Documents). The initial portion of that provision states:

"Buyer (and Buyer's consultants) shall have twenty-eight (28) business days after receipt of each of the following items in which to inspect and approve (and Seller shall immediately upon acceptance of this offer deliver to Buyer true copies of the following documents and access to Property to inspect) and it shall be a condition to Buyer's obligation to close escrow that Buyer shall have approved . . . ." There follows a listing of seven categories of matters to be approved. The fourth of these includes a certified ALTA survey of the property showing all improvements thereon and the location of all exceptions to the title referred to in the preliminary title report.

Although the 60-day provision in the contract would have had escrow close by mid-September, the parties continued to take actions called for under the agreement for a considerable time thereafter. The seller furnished the material required in paragraph 5 on November 15, 1988. On December

2, 1988, a date well within the 28-day period for buyer approval, the buyer wrote the seller rejecting the land survey.

The buyer's letter recites that it had received the survey delivered by the seller, and advised that, "We reluctantly disapprove of the matters disclosed on the Survey and relating to the Property." The following six paragraphs describe the reasons for the rejection in detail. The principal concern appeared to be that a concrete electrical room was constructed on one of the garage parking spaces, and that this reduced the parking spaces to a number below the amount shown on the tract map. According to the buyer's letter, "This fact and its implications represent a serious matter affecting the lawful use, value, title, utility, financeability and marketability of the Property."

The letter continued with an expression of hope that the problems just recited could be surmounted with "some effort, additional time and expense." Rather than cancel, the buyer proposed "some alternatives to keep the deal alive."

Two alternatives were put forward. The first proposed that the seller give the buyer an option until July 1, 1989, to purchase the property for the original price. In return, the seller would have the right to recover $50,000 of the $75,000 deposited in escrow in the event that the buyer should fail to exercise the option.

The second alternative would have reconstructed the agreement into a lease-purchase arrangement, under which the buyer would take possession of the property and pay rent to the seller, and would have an option to purchase "before a certain specified date."

The letter closed with a request to the seller to "advise as to how you wish to proceed with this transaction."

According to the complaint, there was no further communication between the parties until February 2, 1989. On that date, the buyer sent the second letter pertinent to the case. In this correspondence, it advised that, "We are prepared to waive our objections to such items and to proceed to close escrow within 45 days of Ms. Barham's confirmation to us and to escrow that this will be satisfactory to Ms. Barham." The reference to "such items" was to the problems discussed in the December 2, 1988, letter.

The seller then instructed escrow to immediately prepare cancellation instructions and to transmit them to the parties for their inspection. The buyer demanded that seller go forward with the original sale transaction.

The seller refused, and the buyer sued for specific performance. (May 19, 1989.) It also filed a lis pendens. The seller demurred and moved to expunge the lis pendens. The demurrer and motion were heard together on July 21, 1989. The demurrer was sustained. The trial court concluded that, "By disapproving the survey on December 12, 1988, plaintiff buyer terminated the contract and cannot sue on same. The court is satisfied that, if plaintiff were granted leave to amend, it would not plead around exhibit D." (The Dec. 2, 1988, letter.) The court therefore declined to grant leave to amend. It also expunged the lis pendens. This appeal followed.[1]

## DISCUSSION

■ Both sides to this appeal treat the buyer's right of approval under paragraph 5 of the contract as a condition precedent in favor of the buyer. They are quite correct in that characterization.

Section 1436 of the Civil Code (a part of the original 1872 codification) defines a condition precedent as one "which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." Although the Restatement avoids the terms "condition precedent" and "condition subsequent," preferring the word "condition" alone to define the former concept (see Rest.2d Contracts, § 224, com. e), the definition it provides is essentially the same for purposes of the issue in this case: "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." (Rest.2d, Contracts, § 224.) This is consistent with the view of the text writers (see 5 Williston, Contracts (3d ed. 1961) §§ 666A, 675A, pp. 141, 189; 3A Corbin, Contracts (1960) § 647, p. 102; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 729, p. 659) and with the national majority view (see Annot., Sale of Realty—Conditions—Financing (1962) 81 A.L.R.2d 1338). It also is consistent with the California authorities. (See *Mattei* v. *Hopper* (1958) 51 Cal.2d 119, 122 [330 P.2d 625]; *Kadner* v. *Shields* (1971) 20 Cal.App.3d 251, 257 [97 Cal.Rptr. 742].) Finally, we find it significant that the contract language tracks the California statutory definition of a condition precedent as well as the Restatement definition. Paragraph 5(a) specifically provides that "it shall be a condition to Buyer's obligation to close escrow that Buyer shall have approved" of the items specified in the further provisions of the subparagraph, including the property survey.

---

[1] The clerk's transcript does not include a formal order of dismissal, which is the appealable order. Nevertheless, since the trial court's decision is clear and the case has been fully briefed, we will modify the order sustaining the demurrer without leave to amend to include a dismissal of the action, so that the merits of this appeal may be reached. (See *Bellah* v. *Greenson* (1978) 81 Cal.App.3d 614, 618, fn. 1 [146 Cal.Rptr. 535, 17 A.L.R.4th 1118].)

We turn to an examination of the nature of the buyer's power to approve the condition precedent and to the effect of its disapproval.

Most of the textual and case material on "satisfaction" conditions precedent turns on whether an objective or subjective standard is to be used in reviewing the reasonableness of its exercise, whether good faith is required, and whether such clauses render agreements that include them unenforceable. (See Rest. 2d, Contracts, § 228 (objective standard preferred); 5 Williston, *supra*, 675A (honest judgment required; contracts generally upheld); *Mattei* v. *Hopper, supra*, 51 Cal.2d 119 (contracts not illusory).) We put these issues to one side, since neither party questions the reasonableness, under any standard, of the buyer's exercise of its approval authority in the December 2, 1988, letter, let alone its good faith in doing so.

The effect of a buyer's power to approve documentation required in a contract for the purchase of real estate "is to give the buyer an option not to consummate the purchase if it fails to meet the condition," at least so long as the buyer acts reasonably and in the exercise of good faith. (*Crescenta Valley Moose Lodge* v. *Bunt* (1970) 8 Cal.App.3d 682, 687 [87 Cal.Rptr. 428].) Stated another way, the contract gives the buyer the "power and privilege" of termination in the event that it reasonably concludes that the condition has not been fulfilled. (See *Mattei* v. *Hopper, supra*, 51 Cal.2d at p. 122 ["satisfactory" lease]; see also *Fowler* v. *Ross* (1983) 142 Cal.App.3d 472, 478 [191 Cal.Rptr. 183] [effect of failure of condition that buyer obtain financing was termination of contract, even though contract did not include language that specifically so provided].)

■ Under the California rule, the holder of a formal option loses the right to exercise it once it has communicated a formal rejection, and this is so even though the purported exercise occurs within the time specified in the option agreement. (*Landberg* v. *Landberg* (1972) 24 Cal.App.3d 742, 757 [101 Cal.Rptr. 335].) If anything, the situation of a party who has a power to approve or disapprove a condition precedent and also exercises it by disapproval, presents an a fortiori case.

Except for the judicial gloss that the power of rejection must be exercised reasonably, the party having the power to approve or reject is in the same position as a contract offeree. ■ It is hornbook law that an unequivocal rejection by an offeree, communicated to the offeror, terminates the offer; even if the offeror does no further act, the offeree cannot later purport to accept the offer and thereby create enforceable contractual rights against the offeror. (See Rest.2d, Contracts, § 38, illus. 1, and authority cited in Reporter's Note; 1 Witkin, Summary of Cal. Law, *supra*, § 172.)

■ There can be no question but that the buyer exercised its power of disapproval in this case. The December 2, 1988, letter said so expressly ("[w]e reluctantly disapprove the matter disclosed on the Survey and relating to the Property"). This rejection, communicated to the seller, terminated the contract. It left the buyer with no power to create obligations against the seller by a late "waiver" of its objections and acceptance of the proffered documentation.

The fact that the buyer considered the existing contract to be at an end is reflected not only in the unequivocal language of its disapproval, which we have quoted, but also by its effort to keep the "deal alive" by proposing two entirely new formulations that were novel to the agreement of the parties: an option to purchase, and a lease-purchase arrangement. It may be inferred that the buyer was hoping to find a way to acquire the property, but it cannot be doubted that it was unwilling to do so on the basis of what had been presented by the seller.

The buyer presents several arguments in aid of its position that its February 2, 1989, "waiver" and acceptance letter bound the seller to go through with the deal. None of them has merit.

The buyer points out that the contract did not contain a "time is of the essence" clause. From that it argues that it could exercise its power to approve or waive the paragraph 5 documentation within a "reasonable" time, and that whether its doing so two and one-half months after the documents were furnished (instead of within twenty-eight days, as the contract provided) was reasonable is a question of fact. Given the procedural posture of the case, this may be allowed. But it is irrelevant because the buyer exercised its power by rejecting the documentation. The case is entirely different from a simple failure to accept or reject for a period beyond a time specified in the agreement.

For the same reason, we cannot credit the buyer's purported waiver of the objections it had raised in the December 2, 1988, letter. That letter did more than express a concern about the land survey; it disapproved the survey. Approval of the survey was an express condition precedent to the buyer's obligation to perform. The February 2, 1989, letter is consistent with this result. It did not unequivocally do anything. Instead, it stated that the buyer was "prepared" to waive its objection to the survey, and to proceed to close escrow within 45 days of the seller's confirmation that this would be satisfactory to her, and it asked whether it was satisfactory to her. This language reads far more like a renewed offer for a contract than an assertion that the parties have an agreement to which the seller is still bound.

■ The buyer also argues that since the contract does not specify the effect a failure to approve the documentation, it cannot be concluded that the effect was to terminate the agreement, and that parol evidence should be admitted on that issue. This argument suffers from the same infirmity as buyer's other contentions. The buyer did not just fail to approve the documentation; it disapproved it. Absent a contrary agreement, the legal effect of that act was to terminate the contract. The verified pleading contains no suggestion of a contrary agreement, and none is presented to us in the arguments of the parties. Given that, we see no basis for parol evidence.

As we have seen, the trial court sustained the demurrer without leave to amend because it did not believe that the buyer could plead around the December 2, 1988, rejection letter. Nor do we, and nothing to the contrary has been suggested in the briefs. We conclude that the trial court correctly resolved the issues before it.

### Disposition

The order of dismissal is affirmed. Respondent shall have her costs on appeal.

Woods (A. M.), P. J., and Goertzen, J., concurred.