Plaintiff STA Realty, Inc. Trustee (STA)appeals from the judgment of the trial court which directed a verdict against defendant Specialty Restaurants Corporation in the amount of $3,000 and awarded STA attorney fees in the amount of $2,500 on STA's claim for breach of a lease agreement. Specialty Restaurants Corp. (Specialty Restaurants) cross-appeals and asserts that the trial court erred in denying its motion for summary judgment on STA's claim for breach of contract. For the reasons set forth below, we affirm the award of damages to STA in the amount of $3,000, reverse the attorney fee award and remand for redetermination of STA's reasonable attorney fees, and affirm the order denying summary judgment to Specialty Restaurants.
Beginning in 1995, STA, title holder of six acres of land on Scranton Road in the flats, which includes a dock and marina, and Specialty Restaurants, owners and operators of numerous theme restaurants, entered into negotiations for the placement of a barge style restaurant at the marina. On April 1, 1996, the parties entered into a ten year dock lease agreement for Specialty Restaurant's barge Landsdowne to be moored at the area and developed into a restaurant and entertainment complex. In relevant part, the dock lease agreement provided as follows:
3. USE
 The Dock Space is leased to lessee for the purpose of relocating and mooring the Barge, and either directly (or through sub lessees and/or assigns) using the space on and within the Barge for general non-industrial commercial purposes, including, without limitations, restaurants, night clubs, banquet facilities, and retail shops as hereinafter provided.
4. RELOCATION OF BARGE AND LESSEE IMPROVEMENTS
 A. Within thirty (30) days of execution of this Lease, Landlord will register to gain approval of the Army Corp. of Engineers that the Barge may be moved to the Dock Space. Within sixty (60) days of execution of this Dock Lease Agreement, Landlord will attempt to obtain approval of the Army Corp. of Engineers that the Barge may be moved to the Dock Space[,] the unneeded docks removed and the Barge moored at the Dock Space. This Lease is conditioned upon the Barge with the dimensions set forth on Exhibit B and subject to improvements described in subparagraph 4B below being able to be relocated and moored at the Dock Space and that such mooring and commercial use of the Barge as described in paragraph 3 will not violate any applicable law. * * *
 B. Within thirty (30) days of the approval of the Army Corp. of Engineers that the Barge may be moved to the Dock Space, Landlord, at Landlord's expense, shall commence demolition of the Piers and dredging the Dock Space to permit the Barge to be relocated at the Dock Space. Landlord will obtain three (3) bids for the demolition of the Piers and dredging the Dock Space. Lessee shall have the right to seek one (1) bid for the demolition and dredging. The lowest bid shall be used and Lessee shall pay the lower of the minimum bid or $30,000. Landlord shall supply Lessee with copies of the three (3) bids. Lessee shall deposit in a Cleveland financial institution Thirty Thousand Dollars ($30,000). Landlord shall be responsible for any costs in excess of such maximum. * * *
 D. Landlord shall notify Lessee in writing within thirty (30) days of the date Landlord enters into a contract for the demolition of the Piers and dredging the Dock Space of the expected completion date for the demolition/dredging work and the name of the contractors hired to do such work. Landlord, at its expense, shall file application(s) with the appropriate governmental authorities to obtain the permit(s) necessary for the Barge to be moored at the Dock Space. * * *
13. RENTAL
 Lessee covenants and agrees to pay Landlord rent for the Barge according to the following schedule:
A. Minimum Rent
 Commencing June 1, 1996, or 30 days after the Barge is first moored at the Dock Space, whichever is later, but no later than July 1, 1996 and continuing on the first day of each month for two (2) months, the Lessee agrees to pay the Landlord, minimum rent of One Thousand Five Hundred Dollars ($1,500) per month (Minimum Rent). Thereafter, during the term, Lessee agrees to pay to the Landlord Minimum Rent of Three Thousand Dollars ($3,000) per month. If work on the Dock as specified in Article 4 is not completed by June 1, 1996, then the rent commencement date shall be extended by the number of days that it takes to complete the work past July 1, 1996.
* * *
18. ATTORNEY'S FEES
 In case suit shall be brought for an unlawful detainer of the Dock Space, for the recovery of any rent due under the provisions of this Lease, or because of the breach of any other covenant herein contained, on the part of Lessee to be kept or performed, the prevailing party shall be awarded reasonable attorney's fees and court costs.
The agreement further provided that Specialty Restaurants would pay 75% of all taxes on the parcel.
On April 30, 1996, Specialty Restaurants notified STA that it was terminating the dock lease agreement pursuant to Section 23 of the agreement because it was not satisfied that it could obtain a liquor permit. In response, STA's president informed Specialty Restaurants that the notice had not been sent to the correct address and that Specialty Restaurants therefore lost its opportunity to terminate the agreement since the thirty day period subsequently expired. Thereafter, the parties made some additional efforts to prepare the site for the Landsdowne. Specifically, STA obtained the necessary permit from the Army Corps of Engineers and submitted bids to Specialty Restaurants for dredging the site. Specialty Restaurants rejected the submitted bids, stating that they were not valid in the scope of the work to be completed and asked STA to resubmit bids. Specialty Restaurants did not deposit $30,000 into escrow for the dredging work, however.
On July 8, 1996, STA informed Specialty Restaurants that the Landsdowne should have been relocated as of June 7, 1996, and it demanded rental payments from July 7, 1996, onward. In response, Specialty Restaurants informed STA that it considered the dock lease agreement terminated as of April 30, 1996.
On July 2, 1997, STA filed this action for breach of contract against Specialty Restaurants, seeking lost rent, lost income and profits which would have been generated if the project had been completed, including profits by reason of the enhancement of the Marina itself lost related revenue from parking and other services, and unpaid taxes. Specialty Restaurants denied liability and both parties moved for summary judgment. In its motion for summary judgment, STA asserted that Specialty Restaurants did nothing prior to April 30, 1996, to determine whether a liquor license was available and therefore did not meet the requirements of paragraph 23 of the dock lease agreement for terminating the contract. The trial court granted STA's motion for summary judgment, concluding that Specialty Restaurants breached the agreement, and set the matter for trial as to damages.
The matter proceeded to a jury trial on June 28, 1999. STA's evidence demonstrated that it obtained approval (at minimal cost) from the Army Corps of Engineers and the Ohio Environmental Protection Agency, to move the Landsdowne to STA's dock space. In order to obtain the approval of the Army Corps of Engineers, a soil sample was prepared at a cost to STA of $536. STA also obtained drawings from Matrix Engineering depicting the position of the mooring, at a cost of $1,258, but it was not shown that this was contractually required. STA also obtained bids for dredging the area and that Specialty Restaurants rejected all of the submitted bids and failed to deposit money for dredging in an escrow account pursuant to the terms of the dock lease agreement. STA did not, however, remove docks to accommodate the barge or prepare a paved, lighted parking area.
STA also presented evidence that it would have been able to rent its marina building to Wallaby's and other businesses if the project had been completed and that subtenants would have rented and operated the restaurant on the Landsdowne. According to STA, the Landsdowne would have been a successful restaurant and night club which would have served as an anchor tenant or incentive for further growth of its Marina and other property. STA anticipated revenues of $700,000 from the venture.
Finally, STA presented evidence that it informed Specialty Restaurant that a liquor license was available for the barge location but Specialty Restaurant refused to retract its termination of the agreement.
John Tallichet of Specialty Restaurants testified that his reason for terminating the dock lease agreement was that Specialty Restaurants was not satisfied that a liquor license was obtainable. He admitted, however, that the parties did continue to discuss dredging bids subsequent to the April 30, 1996 announcement that Specialty Restaurants was terminating the agreement. Specialty Restaurants did not place money in escrow for the dredging, however. Thereafter, Tallichet became concerned about determining the identities and interests of the true owners of the marina. Tallichet admitted, however, that Specialty Restaurants paid nothing to STA pursuant to the agreement.
Following the trial, the court determined that Specialty Restaurants should have paid $1,500 per month through July 1996. The trial court also determined that Specialty Restaurants was not obligated to pay rent subsequent to that date since there was no rent commencement date under paragraph 13(A) of the agreement because the dock specified in the agreement was never built. The court further concluded that STA did not prove any entitlement to payment for taxes with sufficient certainty because its evidence consisted of tax bills which also included an unspecified delinquent amount and that STA's evidence regarding its lost profits was too speculative to submit to the jury. Finally, the court awarded STA attorney fees of $2,500 but refused to hold a hearing on this issue. STA now appeals and asserts that it was entitled to $677,539, the amount it would have received if the agreement had been fully performed. Specialty Restaurants also appeals and asserts that the trial court erred in denying its motion for summary judgment since it acted within its contractual rights in terminating the agreement and did not breach the agreement.
STA'S APPEAL
STA's first assignment of error states:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING, SUA SPONTE, A DIRECTED VERDICT IN THE AMOUNT OF $3,000.
Within this assignment of error, STA asserts that the trial court erred in entering a directed verdict as to the amount of damages and in failing to allow the jury to determine the full measure of damages in relation to the benefit that STA would have derived if the contract were fully performed. According to STA, this includes the fixed monthly rent for the ten year term, lost profits, taxes and diminution in value.
With regard to procedure, we note that Civ.R. 50(A)(4) states:
 "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
In Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284-285, the Supreme Court set forth the standard for deciding a motion for a directed verdict as follows:
 "The law in Ohio regarding directed verdicts is well formulated. In addition to Civ.R. 50(A), it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion. * * * Thus, `if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied. Kellerman v. J.S. Durig Co. (1964), 176 Ohio St. 320
[27 O.O.2d 241, 199 N.E.2d 562] * * *.' Hawkins v. Ivy (1977), 50 Ohio St.2d 114, 115 [4 O.O.3d 243, 244, 363 N.E.2d 367, 368]."
With regard to the substantive law, STA correctly notes that generally, a party injured by a breach of contract is entitled to his expectation interest or "his interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed." See Rasnick v. Tubbs (1998), 126 Ohio App.3d 431, 436, citing Restatement of the Law 2d, Contracts (1981) 102-103, Section 344. Nonetheless, it is well-settled that in order to recover lost profits in a breach of contract action, the plaintiff must demonstrate "(1) profits were within the contemplation of the parties at the time the contract was made, (2) the loss of profits is the probable result of the breach of contract, and (3) the profits are not remote and speculative and may be shown with reasonable certainty." Charles R. Combs Trucking, Inc. v. Internatl. Harvester Co. (1984),12 Ohio St.3d 241, paragraph two of the syllabus; Textron Fin. Corp. v. Nationwide Mut. Ins. Co. (1996), 115 Ohio App.3d 137, 144.
In analyzing the issue of damages incurred in this matter, we are compelled to note, as a preliminary matter, that there is no covenant in the agreement that mandates Specialty Restaurants to use and occupy the premises. That is, as set forth in GMS Management, Inc. v. Pic-N-Pay Supermarkets, Inc. (1991), 77 Ohio App.3d 39,43-44:
 In Weil [v. Ann Lewis Shops, Inc. (Tex.Civ.App. 1955), 281 S.W.2d 651] the clause at issue provided that the premises were to be leased "for occupation and use as Ladies', Misses' and Children's ready-to-wear and accessories and not otherwise." In interpreting this language, the court held: "Clauses similar to this one have been construed in many cases, and it has never been held to be an agreement to occupy and use the demised premises, but only to restrict the purposes for which the premises may be used." Id., 281 S.W.2d at 654. The Weil court clearly interpreted the specific provision as a restrictive "use" clause, rather than a mandatory "use" clause. It also held that an implied covenant for continuous use could not be inferred from the lease as a whole.
* * *
 The seminal Ohio case on implied covenants of continuous use is Kretch v. Stark (C.P. 1962), 92 Ohio Law Abs. 47, 26 O.O.2d 385, 193 N.E.2d 307. In that case, the lessee was required to pay a fixed amount of rent per month, plus a percentage of the annual gross sales. After reviewing the relevant case law from other states, the court held:
 "Where a lease provides for rental based on a percentage of sales with a fixed substantial adequate minimum and there is no express covenant or agreement to occupy and use the premises, no implied covenant or agreement will be inferred that the lessee is bound to occupy and use the premises for the purpose expressed in the lease. Under such a lease, lessee has no obligation to occupy and use the premises for any stated definite period of time and his obligation under such a lease is limited to the payment of the basic minimum rental to the end of the term when he no longer occupies and uses the premises for the purpose expressed in the lease." (Emphasis sic.) Id. at 62, 26 O.O.2d at 393, 193 N.E.2d at 316.
Likewise, in this instance, there is no mandatory obligation by Specialty Restaurants to use, or take possession of the premises. Further, the minimum rental fee stated in the agreement extended the rent commencement date by the number of days, subsequent to July 1, 1996, needed to complete the Dock Space and this Dock Space was never constructed. Thus, the trial court correctly determined as a matter of law that Specialty Restaurants was not obligated to pay rent subsequent to July 1, 1996, since the Dock Space was not constructed. The trial court correctly found that reasonable minds could only conclude that the lost rentals from May 1996 and June 1996 totaled $3,000.
STA's claim for the payment of taxes was not shown with requisite certainty since the evidence submitted to the trial court clearly indicated an unspecified tax delinquency and did not clearly identify the taxes levied during the relevant times. There was no evidence from which reasonable minds could derive Specialty Restaurant's tax obligation in this instance. This claim was therefore properly rejected by the trial court.
STA's remaining claims for lost profits from the enhancement of the Marina itself and loss of related sources of income were likewise properly rejected by the trial court as a matter of law since there was no evidence that such profits were within the contemplation of the parties at the time the contract was made. These lost profits were therefore not shown to be the probable result of the breach of contract. Further, STA's claim of damages from losses in connection with the gross sales at the Landsdowne were purely speculative and not shown with any degree of certainty.
In accordance with the foregoing, STA's first assignment of error is without merit.
STA's second assignment of error states:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN AWARDING ATTORNEY'S FEES IN THE AMOUNT OF $2,500.
Here, STA notes that the dock lease agreement provides for the award of reasonable attorney fees if suit is filed for the recovery of any rent due under the provisions of this Lease, or because of the breach of any other covenant herein contained[.] STA maintains that the trial court erred in calculating the reasonable attorney fee award without holding an evidentiary hearing.
In Nottingdale Homeowners' Assn. v. Darby (1987) 33 Ohio St.3d 32, the Supreme Court recognized an exception to the general rule, under which attorney fees are ordinarily not recoverable, and determined that if the parties' agreement in a noncommercial context provides for such an award, such an agreement could be enforced if the fees awarded are fair, just, and reasonable as determined by the trial court upon full consideration of all the circumstances of the case.
In First Capital Corp. v. G J Industries, Inc. (1999),131 Ohio App.3d 106, this Court applied a more expansive view to Nottingdale and stated:
 We read Nottingdale and the cases cited above as holding that attorney fee provisions are unenforceable in those commercial situations where there is uneven bargaining position, where the provision promotes litigation and illegal acts such as evading the usury laws, where the provision acts as a penalty, and where the terms of the provision are not freely negotiable. However, we find that attorney fee provisions are enforceable in situations where there are equal bargaining positions, the parties are of similar sophistication, and both parties had the opportunity to obtain counsel to review the provision and negotiate its terms.
In Bittner v. Tri-County Toyota, Inc. (1991), 58 Ohio St.3d 143, the Supreme Court, considered an attorney fee award pursuant to R.C. 1345.09(F)(2), and held that when awarding reasonable attorney fees, the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation by application of the factors listed in DR 2-106(B). The Bittner Court stated:
 * * * the trial court must state the basis for the fee determination. Absent such a statement, it is not possible for an appellate court to conduct a meaningful review.
Id., at 146.
In this instance, there is no indication that the trial court held an evidentiary hearing before determining its attorney fee award. There is therefore no basis upon which to conduct a meaningful review of the attorney fee award. Accordingly, we conclude that the trial court erred in deriving an attorney fee award and we reverse and remand for a hearing as to this issue.
This assignment of error is well-taken. The attorney fee award is hereby reversed and the matter remanded for a hearing before the trial court for consideration of the factors listed in DR 2-106(B). Further, with regard to the position advanced in the concurring opinion that a hearing is not necessary on remand pursuant to this court's previous opinion in Santoscoy v. Ganley Nissan, Inc. (Sept. 2, 1999), Cuyahoga App. No. 75957, unreported, it is determined herein that Santoscoy v. Ganley Nissan, Inc., supra, is distinguishable from this matter because in that case, "Ganley agreed that the matter of the reasonableness of the attorney fees would be `decided on briefs[,]' [and] Ganley did not challenge the admissibility of the attorney fee invoice below." That case therefore contained an adequate record upon which attorney fees could be determined upon remand. In this instance, however, there is no such record and there is no such record upon which any of the requisite factors may be determined. This issue must therefore be remanded for a hearing pursuant to Bittner, supra.
We further note that the dock lease agreement additionally provides that the prevailing party (here, STA) is entitled to the recovery of its court costs and such costs must also be determined upon remand.
SPECIALTY RESTAURANT'S APPEAL
Specialty Restaurants assigns a single error for our review:
 THE LOWER COURT ERRED IN DENYING SPECIALTY'S MOTION FOR SUMMARY JUDGMENT AS A MATTER OF LAW, BECAUSE SPECIALTY PROPERLY TERMINATED THE DOCK LEASE PURSUANT TO ITS SOLE DISCRETION TO DO SO IN CLAUSE 23 OF THE DOCK LEASE AND BECAUSE STA FAILED TO PERFORM ITS OBLIGATIONS.
Within this assignment of error, Specialty Restaurants insists that it did not breach the agreement because the lease was conditioned upon it ascertaining to its satisfaction that liquor licenses will be obtainable for issuance upon the premises.
In order for summary judgment to be properly rendered, it must be determined that:
 (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from such evidence that reasonable minds can come to but one conclusion and, reviewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to the party.
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. See, also, State ex rel. Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447,448. The burden of establishing that there are no genuine issues of material fact to be litigated is upon the party moving for summary judgment. Turner v. Turner (1993), 67 Ohio St.3d 337,340
It is undisputed that Specialty Restaurant terminated the dock lease agreement in accordance with a satisfaction clause contained in paragraph 23 of the agreement. Satisfaction clauses were analyzed in Hutton v. Monograms Plus, Inc. (1992) 78 Ohio App.3d 176,181, as follows:
 Contract clauses which make the duty of performance of one of the parties conditional upon his satisfaction are generally referred to as "satisfaction clauses." These clauses have been divided by the courts into two categories, and have been interpreted in accordance with the category. Mattei v. Hopper (1958), 51 Cal.2d 119, 121, 330 P.2d 625, 626.
 Where the satisfaction clause requires satisfaction as to such matters as commercial value or quality, operative fitness, or mechanical utility, dissatisfaction cannot be claimed unreasonably. In these contracts, an objective standard is applied to the satisfaction clause and the test is whether the performance would satisfy a reasonable person. Id.; Cranetex, Inc. v. Precision Crane Rigging of Houston, Inc. (1988), 760 S.W.2d 298, 301-302.
 If, on the other hand, the satisfaction clause relates to matters involving fancy, personal taste, or judgment, then a subjective standard is applied, and the test is whether the party is actually satisfied. Id. Although application of a subjective standard to a satisfaction clause would seem to give the obligor virtually unlimited latitude to avoid his duty of performance, such is not the case. In these situations, courts impose the limitation that the obligor act in good faith. Mattei, supra, 51 Cal.2d at 121, 330 P.2d at 626. Thus, under the subjective standard, the promisor can avoid the contract as long as he is genuinely, albeit unreasonably, dissatisfied. Which standard applies in a given transaction is a matter of the actual or constructive intent of the parties, which, in turn, is a function of the express language of the contract, or the subject matter of the contract. Kadner v. Shields (1971), 20 Cal.App.3d 251, 262-263, 97 Cal.Rptr. 742, 751-752.
Accord Tapp v. Tapp (1995), 105 Ohio App.3d 159, 162-163.
In this instance, we conclude that even if the satisfaction clause is deemed to relate to a matter involving Specialty Restaurant's judgment, therefore mandating application of a subjective standard, Specialty Restaurant nonetheless breached this provision. The undisputed evidence of record indicates that Specialty Restaurants did not inquire as to whether the liquor license was obtainable until the end of the thirty day period. It contacted its attorney to make this inquiry on April 30, 1996, the last day of this contingency, and immediately informed STA on this same date that it was terminating the dock lease agreement. The undisputed evidence also demonstrates that Specialty Restaurants did not contact the Ohio Liquor Commission until May 1, 1996, or after this contingency expired. Specialty Restaurants did not act in good faith as a matter of law, given its total failure to act during the contingency period. We therefore conclude that the trial court properly found that Specialty Restaurants breached the dock lease agreement.
This assignment of error is without merit.
The order of the trial court which directed a verdict in the amount of $3,000 to STA is affirmed; the order awarding STA $2,500 in attorney fees is reversed and this issue is remanded for further proceedings consistent with this opinion; and the judgment of the trial court which determined that Specialty Restaurants breached the dock lease agreement as a matter of law is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SWEENEY, J., CONCUR.
SPELLACY, J., CONCURS (SEE ATTACHED CONCURRING OPINION).
 ______________________________ ANN DYKE, ADMINISTRATIVE JUDGE