[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case each side claims that the other breached a contract for the sale of a certain office condominium at 25 Van Zant Street in Norwalk, Connecticut ("Unit"). Plaintiff seller ("Stafford") claims that defendant buyer ("Millen") breached its obligation to purchase the premises thereby forfeiting its right to its ten per cent deposit of $148,500.00. CT Page 9206 In addition, plaintiff claims certain other damages entitling it to enforce the liquidated damage clause in the amount of $250,000.00. Defendant purchaser claims that it properly exercised its right to terminate the contract under a contingency clause because of an unsatisfactory engineering report. In addition, defendant makes certain other claims of defense and counterclaims for damages for breach of the contract, alleged violations of the Connecticut Unfair Trade Practices Act ("CUTPA") and alleged violations of the condominium act.
I. FACTS FOUND
Plaintiff is a Connecticut corporation with its principal office in Norwalk, Connecticut. It developed an office condominium at 25 Van Zant Street after purchasing the property in 1976.
Defendant entered into a contract to buy Unit 16 of that office condominium on April 11, 1987. The purchase price was $1,450,031.25. Defendant deposited the sum of $148,500.00 towards the purchase price at the time of the signing of the contract.
Article 3, Section 3.01 of the contract had a contingency clause as follows:
 This agreement is contingent upon the purchaser obtaining a satisfactory engineering report with respect to the premises and mechanical systems within the premises and satisfactory information as to the financial status of the condominium within thirty (30) days from the date hereof.
 In the event that the report is unsatisfactory and written notice thereof is sent to the seller on or before thirty (30) days from the date hereof then this agreement shall terminate and seller shall cause all deposit monies paid, together with interest thereon, to be returned to purchaser.
CT Page 9207 Defendant retained Henry Loheac, a licensed engineer and architect from New York, to inspect the premises. Loheac was assisted in developing a report by the findings of one John Anselmo, a licensed engineer from New York state. The findings reported in the inspection report (plaintiff's exhibit C) are critical to the claims of the parties and can be fairly summarized as follows:
1. The plywood subflooring of the north wing might violate the building and fire codes.
2. The heating ventilation and air conditioning system was not adequate to heat or cool the premises and required an air spill return fan.
3. The windows were single rather than double glazed and, therefore, not in compliance with the energy code.
4. Inadequate lighting.
5. A leaking skylight.
6. Lack of adequate parking facilities.
Defendant caused a letter dated May 8, 1987 to be personally delivered to plaintiff by a courier who took a taxicab from New York City to Norwalk, Connecticut. That letter, (plaintiff's exhibit B) after referencing the unit, provides in the first two paragraphs as follows:
 As you know, paragraph 3.01 of the Purchase Agreement between Stafford-Higgins Industries, Inc. ("seller") and Millen Industries, Inc. ("purchaser") for the sale of the premises provides that the Purchase Agreement ". . . is contingent upon the purchaser obtaining a satisfactory engineering report with respect to the premises and mechanical systems with the premises . . ." as well as a report on "financial status of the condominium."
 We have obtained the enclosed engineering report (the "report") of Henry Loheach, P.C., Architects, and find it unsatisfactory CT Page 9208 with respect to the following items: [the items summarized above as well as complaints about the bathrooms, lounge and financial matters relating to the condominium].
Plaintiff concedes that this letter along with the report was delivered within thirty days under the contract.
Attorney Berchem wrote a letter to Attorney Borg under date of June 26, 1987 advising that the deposit of $148,500.00 was being forwarded to Stafford as a partial payment of the $250,000.00 liquidated damage clause. Attorney Berchem claimed that defendant had failed to perform pursuant to the contract.
Attorney Borg responded to the June 26, 1987 letter by letter dated June 30, 1987 in which he stated that the matter set forth in the original engineering report and supplemental reports had not been resolved and that the seller should "please take notice that the purchaser hereby elects to terminate the contract and demand is hereby made for the return of the escrow deposit of $148,500.00."
Thereafter, plaintiff instituted this suit claiming damages for breach of contract. Defendant filed special defenses and a counterclaim for alleged breach of contract, CUTPA and condominium act violations. Defendant's first line of defense is the claim that the contract was effectively terminated by the notice of May 8, 1987.
II. TERMINATION UNDER THE CONTINGENCY CLAUSE
Plaintiff concedes the timeliness of the May 8, 1987 notice with respect to the engineering report, but makes several claims in support of its contention that there was no effective termination under the contract. Those claims are as follows:
a. The language of the May 8th notice is equivocal. After almost every item listed as unsatisfactory, there is a request to correct the problem. Walter Baum, President of Stafford, testified that he viewed the May 8th letter as mere haggling or an attempt to reduce the price. Further, the letter of June 30, 1987 was the first attempt to "terminate" the contract.
b. Even if the May 8th letter effectively used the language of CT Page 9209 termination, the termination was not proper because the engineering report was not, in fact, unsatisfactory.
To determine the effect of the May 8, 1987 notice, the court must first look to the terms of the contract. Under paragraph 3.01, as quoted above, the agreement is contingent upon a satisfactory engineering report being obtained within thirty days of the April 11, 1987 date of the contract. An engineering report was obtained within that time period.
Paragraph two of the contingency clause states that the agreement shall terminate if the following conditions are met:
1. there is an unsatisfactory engineering report;
2. written notice of such report is sent to the seller; and,
3. such notice is sent within thirty days of the date of the contract.
The timeliness requirement was concededly met. The court will address the remaining two conditions in inverse order.
A. THE TERMINATION LETTER WAS NOT EQUIVOCAL
The May 8, 1987 letter (plaintiff's exhibit B), notifying plaintiff of the unsatisfactory report, lists ten areas of dissatisfaction. Except for the items numbered five and eight, after each problem is identified, there is a request or a suggestion for corrective action. Item two of the May 8th letter is illustrative. It states: "Page four of the report states that the skylight leaks. The leak is to be fixed prior to proceeding."
While it is true that as to eight of the ten items in the notice some type of corrective action is requested or suggested, the court concludes from all the circumstances that there was a clear intent to terminate under the contingency clause. First, Millen's president testified credibly that he sent the May 8, 1987 notice from New York City to Norwalk via courier in a taxicab to meet the deadline. This kind of urgent transmittal would make no sense if it were not meant to exercise the termination right under the contingency clause. If all CT Page 9210 defendant wanted to do was request that the items be taken care of and have the contract continue in force, the time factor would not have been a consideration. A casual letter or even a telephone call could have brought these items to plaintiff's attention. Secondly, the letter references the termination clause, section 3.01, in its very first paragraph as quoted above. In the very next paragraph, the notice states that the report is unsatisfactory and then goes on to delineate the specific items. Thirdly, there is no requirement under the contract that the notice go into specific details. The only requirement is that the report be unsatisfactory and that the seller be given written notice thereof. The notice itself and the attached report satisfy those two conditions.
Conditions to contractual liability may be set by the parties to the contract. Grenier v. Compratt Const. Co.,189 Conn. 144 (1983). Where the contract language is clear, the court must give it effect. Collins v. Sears Roebuck, 164 Conn. 369,373, 374 (1973). The contingency clause created a condition precedent which was not met. Failure of that condition ended the contract and relieved the defendant of any obligation to perform. Lech v. Cahill, 138 Conn. 418 (1951).
The suggestions and requests included in the notice were indications that defendant wished to continue to negotiate a sale. Negotiations after the failure of the condition precedent did not revive the contract. Beverly Way Associates v. Phyllis Barham, 276 Cal.Rptr. 240 (1990).
Item five as to the bathrooms and item eight stating that the windows should be double glazed to conform to the state energy code are simply listed as unsatisfactory with no request for action.
The parties did, in fact, continue to deal with each other after the May 8, 1987 letter because each side was still very much interested in consummating a sale. Defendant wanted to move its offices from New York to a smaller, more suburban-like setting in Connecticut and plaintiff looked upon the items complained of as a sort of "punch list" which could be taken care of.
B. THE REPORT WAS, IN FACT, UNSATISFACTORY
Plaintiff contends that, even if the May 8, 1987 CT Page 9211 letter purported to terminate the contract, it was not effective because the report was not unsatisfactory.
Plaintiff claims that the report was not actually done by an engineer because Loheac was not an engineer and was not licensed in Connecticut. He was a licensed New York architect who was assisted in preparing the report by a John Anselmo who was a licensed New York engineer. The short answer to this claim is that there is no requirement in the contract that the engineering report be compiled by a licensed Connecticut engineer. There was no evidence that either Loheac or Anselmo was unqualified to render the report.
Plaintiff next complains that Anselmo never actually physically inspected the HVAC system but rather relied on plans supplied to him of that system. Loheac testified, however, that the plans are precisely what an engineer would examine rather than tear away walls, etc., to inspect. The court finds the procedure used was proper.
Plaintiff also contends that the actions of the parties indicated that they did not intend for the May 8, 1987 notice to terminate the contract. The flaw in this claim is that the only relevant intent is the defendant's as only the defendant had the right to terminate the contract. The fact that defendant's counsel did not use the actual word "terminate" or demand the deposit back until June has no bearing on the question of whether there was an effective termination as of May 8, 1987. The termination was indeed effective and what happened thereafter could not revive the contract.
The parties agree that a clause such as this calling for one party to be satisfied is governed by a subjective, good faith test. Defendant cites the case of Lieberman v. Beckwith,79 Conn. 317 (1906), which says, at pages 319, 320:
 It is competent for parties to a contract for sale to agree that the thing which is the subject of the contract shall be satisfactory to the vendee, and that the contract shall not be binding on the vendee unless, after examination of the thing or at the time fixed for delivery and payment, the vendee is satisfied with the thing. When the intention to make such an agreement is CT Page 9212 clearly expressed in a contract for sale, the vendor cannot enforce the contract and recover the agreed price unless the vendee is satisfied with the thing. In an action against the vendee it is not enough that the court can say he ought to be satisfied with it, and that his dissatisfaction is unreasonable. He, and not the court, is entitled to judge of that.
Honest dissatisfaction where a contract calls for work to be done to an owner's satisfaction precludes recovery by a contractor. Hawken v. Daley, 85 Conn. 16 (1911). Even when the dissatisfaction is unreasonable, recovery is precluded if the dissatisfaction is honestly held. Zaleski v. Clark, 44 Conn. 218
(1876); Codeanne v. Conn. Hard Rubber Co., 12 Conn. Sup. 154
(1943).
Pannone v. Grand Maison, 3 Conn. L. Rptr. No. 16, p. 15 (Superior Court, 1990) was a case which involved a purchase agreement for a home. A contingency clause allowed the buyer to terminate in the event there was an unsatisfactory radon inspection. Although the report of the radon inspector showed radon levels well below what the EPA would consider cause for concern, the court nevertheless held that the purchaser properly invoked the contingency clause and terminated the contract. His dissatisfaction was not objectively reasonable but, nevertheless, honestly held in good faith.
A duty of good faith and fair dealing is imposed upon all parties to a contract. Warner v. Konover, 210 Conn. 150
(1988). Central New Haven Development Corp. v. LaCrepe,177 Conn. 212 (1979). Defendant's dissatisfaction was held in good faith based on the items in the engineering report.
Even under an objective test, the engineering report could be considered unsatisfactory. The court finds that the plywood subfloor was a violation of the applicable building codes and a potential fire hazard. The court further finds that the single glazed windows violated the energy code which was applicable at the time, and the HVAC system was compromised and inadequate.
III. DEFENDANT'S REMEDY
CT Page 9213 Under section 3.01 of the contract, if the engineering report is unsatisfactory, upon proper notice the buyer (defendant) is entitled to a return of the deposit of $148,500.00 plus interest.
Defendant counterclaims that it is entitled to attorney's fees because plaintiff violated Connecticut General Statutes 47-90a(a) and (b) by misrepresentations in the declarations of condominium. The defendant alleges in paragraph six of its counterclaim:
 Article V of the Declaration of Condominium states that "[t]he building housing the units is a reinforced concrete structure" and that "[a]ll flooring is of heavy-duty reinforced concrete."
Paragraph ten goes on to allege that the north wing of the building is wood and the floor is plywood. Millen alleges that the misrepresentations violated Connecticut General Statutes 47-90a(a) which states:
 Any declarant who, in disposing of a condominium unit, makes an untrue statement of a material fact, or who, in disposing of a condominium unit, omits a material fact required to be stated in a public offering statement or necessary to make the statements made not misleading, is liable as provided in this section to the purchaser unless in the case of an untruth or omission it is proved that the purchaser knew of the untruth or omission or that the declarant offering or disposing of a condominium unit did not know and in the exercise of reasonable care could not have known of the untruth or omission, or that the purchaser did not rely on the untruth or omission. [Emphasis supplied.]
The court is satisfied that Millen knew of the wood construction before signing the contract and did not rely on the untruths.
Robert Katz, the broker, testified that he told CT Page 9214 defendant's president about the wood construction when he looked at the premises before contract. Katz also testified that he told defendant's architect, Loheac, about the wood construction. Defendant's president (Steve Shulman) at one point denied that he had been told of the wood construction. Schulman admitted in a deposition that he knew of the wood floor at least by April 16, 1987.
The court finds that Katz's testimony was the more credible and, in fact, proved that defendant knew of the untruths before contract. Further, the court finds that defendant did not rely on the untruths. The contingency clause (3.01) was obviously inserted so that defendant could make an independent judgment about the building.
Defendant alleged that plaintiff violated Connecticut General Statutes 42-110b(a) (CUTPA) in several respects:
a. wrongful refusal to return the deposit;
b. failure to provide plans on request;
c. false representations as to the flooring;
d. anticipatory breach of contract;
e. violation of the condominium act and building codes;
f. breach of warranties of merchantability, fitness and habitability.
The court finds that the refusal to return the deposit was mistaken in law, but not unreasonable under plaintiff's claim of breach by defendant. There could be no anticipatory breach of contract as there was an effective termination by defendant. As to the balance of the allegations, the court finds that defendant has not sustained its burden of proof of CUTPA violations. Web Press Services v. New London Motors Inc., 203 Conn. 342 (1987) sets out the criteria for averring CUTPA claims as follows:
a. did the practice offend public policy established by the statutes and common law;
b. was the practice immoral, unethical, offensive or CT Page 9215 unscrupulous; and,
c. did it cause substantial injury to consumer, competitors or other business persons.
A practice does not have to fit into all of these categories to be a violation; however, on all of the evidence, the court finds no violation.
Judgment enters for the defendant on the complaint. Judgment enters for the defendant on the first count of the counterclaim only to recover the sum of $148,500.00 (the deposit) plus interest from June 30, 1987[1] to October 6, 1992 in the amount of $78,210.00 for a total judgment of $226,710.00 plus costs. Judgment enters for the plaintiff on all other counts of the counterclaim.
E. EUGENE SPEAR, JUDGE